UNITED STATES DISTRICT COURT
for the SOUTHERN DISTRICT OF INDIANA,
INDIANAPOLIS DIVISION

| | |
|---|---|
| PAIN CENTER OF SE INDIANA, LLC, et al., | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| vs. | ) CAUSE NO. 1:13-cv-133-RLY-DKL<br>) |
| ORIGIN HEALTHCARE SOLUTIONS, LLC, et al., | )<br>)<br>) |
| Defendants. | ) |

ENTRY

*Plaintiff's Motion to Compel* **[doc. 52]**

Plaintiffs assert several claims against Defendants for alleged failures of software products and services that Plaintiffs purchased in 2003 and 2006. Plaintiffs now move to compel Defendants to answer requests 84 through 101 of *Plaintiffs' First Set of Requests for Production of Documents* [doc. 52-1], which have been described as the "alter ego discovery." Defendants object that the discovery is overbroad as written and is irrelevant and unduly burdensome at this stage of the proceedings.

The three defendants are Origin Healthcare Solutions, LLC ("Origin Healthcare"); SSIMED, LLC ("SSIMED"); and Origin Holdings, Inc. ("Origin Holdings"). According to the *First Amended Complaint* [doc. 16] ("*Complaint*"): **(1)** Plaintiffs' two contracts in 2003 and 2006 were with SSIMED, *Complaint* ¶ 16 and exhibits [doc. 16-1], but Origin Healthcare later "represented that it assumed the contract," *id.* ¶ 16; **(2)** SSIMED either merged with

Origin Healthcare (presumably after the contracts were executed) and no longer exists or it still exists but Origin Healthcare became the sole member of SSIMED, *id.* ¶¶ 4, 14, 17; **(3)** the third defendant, Origin Holdings, is the parent corporation of Origin Healthcare, *id.* ¶ 18; and **(4)** all three defendants are entities organized and existing (*if* still existing) under the laws of Delaware. *Id.* ¶¶ 4 - 6.[1]

The *Complaint* alleges that each of the three defendants "were an owner, a co-owner, an agent, representative, partner, and/or alter ego of its co-defendants, or otherwise acting on behalf of each and every remaining Origin entity and, in doing things hereinafter alleged, were acting within the course and scope of their authorities as an owner, a co-owner, an agent, representative, partner and/or alter ego of its co-defendants, with the full knowledge, permission and consent of each and every remaining defendant, each defendant having ratified the acts of the other co-defendants." *Complaint* ¶ 21. The vast majority of the *Complaint*'s substantive allegations about Defendants' acts, omissions, and

---

[1] Plaintiffs also name two groups of "John Does" as defendants. *Complaint* ¶¶ 7 and 8. John Does 1-100 represent the "shareholders, promoters, or subscribers to the stock of Defendant Origin Holdings, Inc[.], but upon information and belief are not citizens of Indiana for diversity purposes." *Complaint* ¶¶ 8 and 22. John Does 1-50, "whether individual, corporate, associate or otherwise," "were and are in some matter [*sic*] responsible for the actions, acts, and omissions herein alleged and for the damage caused by the defendants" and "were, at all times herein mentioned, acting in concert with, and in conspiracy with, each and every one of the remaining defendants." *Id.* ¶¶ 7, 152, and 153. (It is unknown whether the *Complaint*'s overlapping nomenclature is intended to indicate that all of the John Does 1-50 are also members of the John Does 1-100 group.) "[U]pon information and belief," John Does 1-50 "are not citizens of Indiana for diversity purposes." *Id.* ¶ 7.

Because naming John-Doe defendants has no effect and is not permitted under federal law, *Howell v. Tribune Entertainment Co.*, 106 F.3d 215, 218 (7th Cir. 1997); *Kennedy v. Schneider Electric*, No. 2:12-cv-122-JD, *Opinion and Order*, 2012 WL 6150828 (N.D. Ind., Dec. 11, 2012), the Court disregards these unnamed defendants and any claims made regarding them.

representations identify only the collective "Origin" or "Origin entities," without distinguishing the entities. *Id.* and ¶ 20.

The *Complaint* alleges the following facts in support of Plaintiffs' assertion that Defendants are alter egos of each other.[2]

1. "all operated and were headquartered during the relevant time period at the same corporate address";

2. "in correspondence to investors, the public, and consumers, the Origin

---

[2] As literally phrased, these facts are alleged in support of an assertion that the three entity defendants are alter egos of the "Origin Shareholders," meaning the "shareholders, promoters, or subscribers to the stock of corporate Defendant Origin Holdings, Inc[.]", *Complaint* ¶ 8, not of each other:

> There exists, and at all times herein mentioned existed, a unity of interest between Origin Shareholders and the remaining Origin entities (SSIMED, LLC and Origin Healthcare Solutions, LLC) such that any individuality and separateness between the Origin Shareholders and the aforementioned Origin entities have ceased, and SSIMED LLC and/or Origin Healthcare Solutions, LLC are the alter egos of the Origin Shareholders. [Fact allegations follow.]

*Id.* ¶ 23.

> Adherence to the fiction of separate existence of the shareholders from the obligations of SSIMED, LLC or Origin Healthcare Solutions would permit the abuse of corporate privilege and produce an inequitable result . . . .

*Id.* ¶ 25.

However, these alleged facts do not address relationships between Origin Holdings' shareholders and the corporate entity defendants but are directed only to the relationships among the three corporate defendants. Therefore, the Court assumes that these alleged facts are the ones on which Plaintiffs rely to support their claim that Defendants are alter egos of each other. To the extent that the Court is wrong — *i.e.*, that Plaintiffs, in fact, allege these facts only in support of a claim that SSIMED and Origin Healthcare are alter egos of the shareholders of Origin Holdings — then the Court has already rejected above the unnamed shareholders ("John Does 1-100") as parties in this case, which renders these allegations irrelevant to Plaintiffs' entity alter-ego assertion. Further, in the absence of supporting factual allegations, the *Complaint*'s assertion that the entity defendants are alter egos of each other would appear to be merely conclusory and not plausible.

>
> entities utilized the names of all the various Origin entities interchangeably";
>
> 3. the three entities "shared common directors and other personnel";
>
> 4. the three entities "made decisions in a uniform voice";
>
> 5. "said directors and personnel were aware of many of the allegations giving rise to this Complaint, including knowingly creating, developing, and propagating false information to consumers and investors";
>
> 6. "Origin entities commingled assets";
>
> 7. "their objectives were common, not disparate";
>
> 8. "Defendant Origin Holding[s], Inc., utilizes Origin Healthcare Solutions, LLC, which to the extent it is alleged to exist separately, utilizes SSIMED, LLC as a mere shell and sham to avoid individual liability for the purpose of substituting a solvent corporation in exchange for the liabilities that SSIMED, LLC and/or Origin Healthcare Solutions, LLC are unable to pay"; and
>
> 9. "shareholders, *inter alia*, invited the public generally and Plaintiff in particular, to deal with the companies as one entity".

*Complaint* ¶¶ 23, 24, and 25.  The *Complaint* concludes that "[a]s a result of the acts, and omissions complained of in this Complaint, the Origin entitles [*sic*] are jointly and severally liable, for all relief sought herein by Plaintiffs."  *Id.* ¶ 26.

Defendants object to Plaintiffs' requests for production nos. 84-101, which seek documents regarding the relationships among Defendants, as overbroad because they seek information regarding two entities who are not parties and whose corporate veils Plaintiffs do not seek to pierce, namely SSIMED Holdings, LLC and Origin Parent, LLC. Defendants' primary objection, however, is relevance and timing. They argue that the alter-ego issue is not relevant at this time. They argue that the issue will become relevant only if Plaintiffs' substantive claims in-chief are decided in their favor. At that point, the equitable issue of piercing the corporate veil can be determined by the Court as part of any proceedings supplemental that occur and discovery can be pursued at that time. Defendants contend that, in light of this alternative, which works no prejudice to Plaintiffs, it would be an undue burden and judicially inefficient to compel them to respond to Plaintiffs' requests now.

Plaintiffs respond that requests nos. 84-100, although called the alter-ego or piercing-the-veil request, in fact "clearly overlap[] with various other claims and defenses." (*Plaintiffs' Memorandum Brief in Support of Motion to Compel* [doc. 53] ("*Brief*") at 7); see also (*id.* at 3 n. 1, 4, and 9-10); *Plaintiffs' Reply Brief in Support of Its* [*sic*] *Motion to Compel* [doc. 55] ("*Reply*") at 1-2 n. 1, and 6). However, because Plaintiffs wholly fail to explain how these requests are relevant to which other claims and defenses, the Court assumes, for the purposes of the present motion, that they are relevant only to the entity alter-ego allegations. Plaintiffs also argue that, because Defendants may move at any time for

5

summary judgment on, or dismissal of, the alter-ego issue directly or the liability of any individual defendant, and because such a motion is likely, Plaintiffs should not be put at a disadvantage in responding by not having the relevant discovery or to the extra delay and expense of commencing discovery at that time. Further, Plaintiffs argue that their entitlement to file their own motion for summary judgment on the alter-ego issue should not be thwarted by denying them the relevant discovery now. Finally, Plaintiffs argue that because the alter-ego, or veil-piercing,[3] issue is a question of fact for determination by the jury, not the Court, it would be improper and inefficient to bifurcate the issue and/or to postpone it to proceedings supplemental. (*Brief* at 4 n. 3; *Reply* at 3).

The parties agree that the substantive issue of whether Defendants are alter egos of each other will be determined by the law of their state of incorporation — in this case, Delaware, for all three. However, they disagree on whether the issue is one of equity, for the Court to decide (Defendants' position), or one of law for the jury (Plaintiffs' position). Plaintiffs simply misread the law. Piercing the corporate veil is an equitable issue that is decided by the court, without a jury, *International Financial Services Corp. v. Chromas Technologies Canada, Inc.*, 356 F.3d 731 (7th Cir. 2004); *National Soffit & Escutcheons, Inc. v.*

---

[3] The alter-ego doctrine is often described as a subset of the doctrine of piercing the corporate veil, specifically the subset of treating multiple corporate entities as a single entity and holding each jointly and severally liable. Another subset, often described simply as piercing the corporate veil, is overcoming, or piercing, a corporate entity's protection of limited liability and imposing vicarious liability on individuals, specifically, its shareholders, directors, and/or officers. Under this scheme, Plaintiffs' *Complaint* asserts alter-ego liability against all the entity defendants and seeks to pierce Origin Holdings' corporate veil and hold its shareholders jointly and severally liable as well. However, as noted above, because the "John Does 1-100" defendants, representing Origin Holdings' shareholders, are improper, only the alter-ego assertion remains, implicating only the corporate entity defendants.

*Superior Systems, Inc.*, 98 F.3d 262, 265 (7th Cir. 1996), and the court decides not only the ultimate question of whether to pierce the veil but all relevant facts. Only if there are common questions of material fact between the legal and equitable issues in a case, will a jury find facts that are relevant to a veil-piercing issue, in which case a court is bound by a jury's factual findings. *Id.* Because Plaintiffs did not identify any relevance of their alter-ego requests for production to the parties' claims or defenses, the Court assumes that determination of the alter-ego issue does not involve common questions of fact and that the Court, not the jury, will make that determination.

The Court agrees with Defendants that, considering the burden that responding to Plaintiffs' alter-ego requests would impose on them and considering the conditional relevance of those requests (only if the jury returns a verdict in Plaintiffs' favors), Defendants need not comply with Plaintiffs' requests nos. 84-101 at this time. However, the Court cannot rule at this time that the requested documents must be produced only if and when Plaintiffs assert the issue in proceedings supplemental. First, if Defendants move before trial for summary judgment on the alter-ego issue, then Plaintiffs will be entitled to conduct relevant discovery in order to permit them to meaningfully respond to such a motion. Because the issue will be determined by the Court, it might still decide to take such a motion under advisement until after jury trial; however, Defendants' filing of such a motion before trial would tend to indicate that they have changed their minds about whether the burden of production before trial is undue, leaving judicial efficiency as the

primary factor determining whether the motion is held in abeyance.

Second, there might be a question whether Plaintiffs' alter-ego claims may be heard and determined in a proceeding supplemental. That question is answered by the law of the forum state. Fed. R. Civ. P. 69; *Star Ins. Co. v. Risk Marketing Group, Inc.*, 561 F.3d 656, 660 (7th Cir. 2009). Because the parties did not sufficiently brief the issue of Indiana law on this point and the Court did not find definitive Indiana precedent, it does not make a ruling at this time. The question might be answered by focusing on the precise purpose of the alter-ego allegations. *Compare Star Ins. Co.*, 561 F.3d at 660-61, *with Dexia Crédit Local v. Rogan*, 629 F.3d 612, 622-25 (7th Cir. 2010), *cert. denied*, 132 S.Ct. 93 (2011). Even if it is concluded that the issue may not be heard in supplemental proceedings, it may be raised by way of a post-verdict motion for a bench trial on the issue of alter-ego liability, before invoking proceedings supplemental. *See International Financial Services*, 356 F.3d at 737.

Because all three alleged alter-ego entities are named defendants in this Cause, some affirmative action will have to be taken if the Court determines not to address the alter-ego issue until after jury trial.[4] Defendants might move to dismiss the alter-ego defendants on pleading-deficiency or other non-alter-ego grounds. Or Defendants by motion or the Court

---

[4] Ultimately, the decision of when to address the veil-piercing question will be determined by the district judge. This Entry decides only the present motion to compel in the circumstances and procedural posture of this Cause at the present time.

*sua sponte* could raise the issue of bifurcation of the alter-ego defendants.[5]

*Plaintiff's Motion to Compel* [doc. 52] is **DENIED**. Because the *Complaint* discloses uncertainty regarding the current legal status of SSIMED, or the formally responsible defendant by assignment or otherwise, discovery directed to that issue would not be inconsistent with this Entry.

**DONE this date:** 01/28/2014

Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Distribution to all ECF-registered counsel of record *via* ECF-generated e-mail.

---

[5] Because the *Complaint* is uncertain whether SSIMED, LLC, the formally contracting defendant, still exists and whether its contracts were assumed by Origin Healthcare, that preliminary fact question, at least, would have to be addressed in order to determine which defendant(s) go to jury trial and which are only alter-ego defendants whose liabilities will be determined by the Court.