UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| PAIN CENTER OF SE INDIANA, LLC; INDIANA PAIN MEDICINE AND REHABILITATION CENTER, P.C., and ANTHONY ALEXANDER, M.D. | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | 1:13-cv-00133-RLY-DKL |
| ORIGIN HEALTHCARE SOLUTIONS LLC; SSIMED (d/b/a SSIMED Holding, LLC); ORIGIN HOLDINGS, INC., a Delaware Corporation; JOHN DOES (1-50) inclusive; and JOHN DOES (1-100) inclusive | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**ENTRY ON PLAINTIFFS' OBJECTION TO MAGISTRATE JUDGE LARUE'S JANUARY 28, 2014 ENTRY**

Plaintiffs, the Pain Center of SE Indiana, LLC, The Pain Medicine and

Rehabilitation Center, P.C. and Anthony Alexander, M.D., object to the Magistrate

Judge's January 28, 2014 Entry denying Plaintiffs' Motion to Compel Defendants, Origin

Healthcare Solutions, LLC, SSIMED, d/b/a SSIMED Holding, LLC, and Origin

Holdings, Inc., to answer requests numbered 84 through 101 of Plaintiffs' First Set of

Production of Documents.  For the reasons set forth below, the court **SUSTAINS** the

Plaintiffs' Objection and **REMANDS** the motion to the Magistrate Judge for proceedings

consistent with this Entry.

1

## I.      Background

According to the First Amended Complaint ("Complaint"), SSIMED was

established in 1991 as an electronic health record vendor and provider of physical

software and services.  (Filing No. 16, at ECF p. 4).  The software was directed at

medical claim coding, patient appointment tracking, and medical insurance billing.

(Filing No. 16, at ECF p. 4).  Plaintiffs entered into contracts to purchase this software in

2003 and in 2006 from SSIMED but at some later point, Origin Healthcare Solutions

assumed the contracts as successor-in-interest to SSIMED.  (Filing No. 16, at ECF p. 4,

Filing No. 16, at ECF p. 10, Filing No. 16, at ECF p. 16).  Origin Holdings is the parent

corporation of Origin Healthcare Solutions.  (Filing No. 16, at ECF p. 5).

Plaintiffs' Complaint generally alleges that the software they purchased from

Defendants (collectively referred to in the Complaint as "Origin" or the "Origin

entities"), entitled "Practice Manager" and "EMRge", was defective, support services

were deficient, and, as a result, Plaintiffs suffered multimillion-dollar losses.  (*See

generally*, Filing No. 16).  The 48-page Complaint consists of thirteen Counts, including

a count for fraud (Count I), fraud in the inducement (Count II), breach of contract (Count

III), unjust enrichment (Count V), breach of warranties (Count VI), and fraudulent

misrepresentation (Count VII).

As regards the three Origin entities who are named defendants in this action, the

Complaint alleges that:

> The Origin entities, and each of them, were an owner, a co-owner, an agent,
> representative, partner, and/or alter ego of its co-defendants, or otherwise
> acting on behalf of each and every remaining Origin entity and, in doing

> things hereinafter alleged, were acting within the course and scope of their authorities as an owner, a co-owner, an agent, representative, partner, and/or alter ego of its co-defendants, with full knowledge, permission and consent of each and every remaining defendant, each co-defendant having ratified the acts of the other co-defendants.

In support of this allegation, the Complaint alleges that: (1) all operated and were headquartered during the relevant time period at the same corporate address; (2) in correspondence to investors, the public, and consumers, the Origin entities utilized the names of all the various Origin entities interchangeably; (3) the Origin entities shared common directors and other personnel; (4) the Origin entities made decisions in a uniform voice; (5)  the directors and personnel were aware of many of the allegations giving rise to the Complaint, including knowingly creating, developing, and propagating false information to consumers and investors; (6) the Origin entities commingled assets; (7) the Origin entities' objectives were common; (8) Origin Holding utilizes Origin Healthcare Solutions as a shell and sham and, to the extent SSIMED exists, Origin Healthcare Solutions utilizes SSIMED as a shell and sham to avoid individual liability; and (9) shareholders invited the public (and the Plaintiffs) to deal with the Origin entities as one entity.  (Filing No. 16, at ECF pp. 5-7).  As a result, Plaintiffs allege the Origin entities are jointly and severally liable for all relief sought by the Plaintiffs.  (Filing No. 16, at ECF p. 7).

Plaintiffs' First Request for Production of Documents includes 103 document requests; only requests numbered 84-101, described by the parties as the alter ego requests, are at issue.  (Filing No. 52-1, at ECF pp. 15-19).   Those specific requests seek records on various topics from the Origin entities, defined in the First Request for

3

Production of Documents as including not only the three named defendant entities, but also SSIMED Holdings, and Origin Parent, LLC. (Filing No. 52-1, at ECF p. 4). Defendants objected, and the Plaintiffs filed the present Motion to Compel.

Before the Magistrate Judge, the Plaintiffs argued that: (1) the alter-ego discovery is relevant to its claims and defenses, and is not limited solely to the alter-ego issue, but is also germane to other issues; (2) the decision to stay discovery will add time and expense to this case; (3) the decision to stay discovery will prejudice the Plaintiffs by, *inter alia*, preventing them from filing a dispositive motion on that issue; and (4) Defendants have asked for similar discovery; for example, asking for all financial records relating to the operation or administration of Plaintiffs' enterprises. Defendants responded that the alter ego requests for production were: (1) overly broad because they included entities that were not named in the Complaint; (2) not drafted with "reasonable particularity" as required by Federal Rule of Civil Procedure 34(b)(1)(A); and (3) overly burdensome given the time and cost of producing the discovery to date. Of notable import to the present objection, Defendants also argued that alter ego discovery is relevant only if a finding of liability against the Defendants on the underlying claims is established – presumably during post-judgment proceedings supplemental. Thus, the court should stay discovery on the alter ego issue, which is an issue for the court and not the jury, until a finding of liability is established to minimize jury confusion and promote judicial economy.

In denying Plaintiffs' Motion to Compel the production of materials related to requests numbered 84-101, the Magistrate Judge ruled:

The Court agrees with Defendants that, considering the burden that responding to Plaintiffs' alter-ego requests would impose on them and considering the conditional relevance of those requests (only if the jury returns a verdict in Plaintiffs' favor), Defendants need not comply with Plaintiffs' requests nos. 84-101 at this time. . . . [I]f Defendants move before trial for summary judgment on the alter-ego issue, then Plaintiffs will be entitled to conduct relevant discovery in order to permit them to meaningfully respond to such a motion. Because the issue will be determined by the Court, it might still decide to take such a motion under advisement until after jury trial; however, Defendants' filing of such a motion before trial would tend to indicate that they have changed their minds about whether the burden of production before trial is undue, leaving judicial efficiency as the primary factor determining whether the motion is held in abeyance.

(Filing No. 64, at ECF pp. 7-8).

## II.   Standard of Review

Pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, the district court may modify or set aside any part of a non-dispositive order that is clearly erroneous or contrary to law. A factual finding is "clearly erroneous" "'if the district court is left with the definite and firm conviction that a mistake has been made.'" *Jones v. City of Elkhart,* No. 2:10-cv-402-TLS, 2012 WL 2458606, at *1 (N.D. Ind. June 27, 2012) (citing *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 943 (7th Cir. 1997)). A conclusion of law is "contrary to law" where the magistrate judge "'fails to apply or misapplies relevant statutes, case law, or rules of procedure.'" *Henry v. Centeno,* No. 10 C 6364, 2011 WL 3796749, at *1 (N.D. Ill. Aug. 23, 2011) (quoting *Tompkins v. R.J. Reynolds Tobacco Co.*, 92 F.Supp.2d 70, 74 (N.D.N.Y. 2000)). With this standard in mind, the court now turns to Plaintiffs' objections.

5

**III.   Discussion**

Plaintiffs argue the Magistrate Judge's ruling is contrary to law because: (1) the alter-ego allegations are relevant to the claims and defenses in this case, and (2) a stay of the alter-ego discovery will result in prejudice to the Plaintiffs.

The alter ego theory is relevant to establishing whether liability attaches to a given party. Thus, numerous courts address the alter ego issue as part of the underlying case. *See Longhi v. Mazzoni*, 914 N.E.2d 834 (Ind.Ct.App. 2009) (appeal of trial court's ruling to pierce the corporate veil); *Harnish v. Liberty Farm Equine Reproduction Ctr., LLC*, No. 3:10-cv-511-PPS, 2013 WL 3233243 (N.D.Ind. June 25, 2013) (corporate veil piercing analyzed on summary judgment); *Symons Int'l v. Continental Casualty Co., et al.*, No. 1:01-cv-799-RLY-KPF, 2007 U.S. Dist. LEXIS 27356 (S.D. Ind. Mar. 31, 2007) (corporate veil piercing analyzed on cross motions for summary judgment). Some courts, however, do not. *Mandeville v. Quinstar Corp.*, 109 Fed.App'x 191, 194 (10th Cir. 2004) (district court did not abuse its discretion in bifurcating breach of contract and ERISA claims from alter ego issues); *MidAmerican Dist., Inc. v. Clarification Tech., Inc.*, 807 F.Supp.2d 646, 664, 683 (E.D. Ky. 2011) (district court affirmed magistrate judge's decision to bifurcate the contract claims from alter ego allegation and found that equitable remedy of piercing the corporate veil should be pursued only if and when defendant is found liable on underlying claims and unable to satisfy judgment); *Higgins v. Journal Register Co.*, No. 3:06-cv-1446(AVC), 2007 WL 3124731, at *3 (D. Conn. Oct. 23, 2007) (denying motion to compel veil-piercing requests and finding the issue should be bifurcated from the age discrimination claims "for the sake of convenience,

6

minimization of juror confusion, and economy"). Accordingly, there is no hard and fast rule governing discovery in cases involving an alter ego theory of liability; thus, the propriety of the Magistrate Judge's ruling comes down to her analysis regarding whether a *de facto* stay of discovery was warranted in this case. The court uses the term *de facto* because the ruling does not explicitly state that discovery is stayed, but that is the implication.

The Federal Rules of Civil Procedure provide the court (in this case, the Magistrate Judge) with broad discretion to control discovery in a given case. *Semien v. Life Ins. Co. of N. Am.*, 436 F.3d 805, 813 (7th Cir. 2006). For example, the court may limit the frequency or extent of discovery if it determines that "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case . . . and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii). In addition, "for the parties' and witnesses' convenience and in the interests of justice," a court may limit the scope of discovery or control its sequence. Fed. R. Civ. P. 26(d). Thus, "[i]n ruling on a motion to limit discovery[,] the [court] must compare the hardship to the party against whom discovery is sought, if discovery is allowed, with the hardship to the party seeking discovery if discovery is denied." *Marrese v. Am. Academy of Orthopaedic Surgeons*, 706 F.2d 1488, 1493 (7th Cir. 1983).

Here, the Magistrate Judge issued a *de facto* stay of discovery contingent upon whether the Defendants move for summary judgment on the alter ego issue, in which case the Plaintiffs would then have the opportunity to conduct discovery before filing a response. (Filing No. 64, at ECF p. 7). The Magistrate Judge concluded that Defendants'

filing of such a motion would "tend to indicate" that Defendants have "changed their minds about whether the burden of production before trial is undue, leaving judicial efficiency as the primary factor in determining whether the motion should be held in abeyance." (Filing No. 64, at ECF p. 7).

The court finds the Magistrate Judge's ruling is contrary to law for three reasons. First, contrary to Rule 26, the ruling effectively cedes control of the conduct and timing of discovery to the Defendants. Second, the Magistrate Judge's ruling is inconsistent, in that she finds producing this discovery is unduly burdensome to the Defendants *unless* the Defendants determine it is not, presumably through the filing of a motion for summary judgment. Third, the Magistrate Judge's ruling does not meaningfully take into account Plaintiffs' asserted grounds of prejudice: (1) "the discovery in dispute involves overlapping theories beyond veil-piercing requiring additional judicial involvement if a stay is granted"; (2) "Plaintiffs will incur additional delay and expense if discovery is stayed at this stage"; (3) "Defendants have already requested information relevant to an alter ego defense"; and (4) "Plaintiffs should not be deprived of a procedural mechanism available to Defendants prior to its availability to Plaintiffs." (Filing No. 55, at ECF p. 6). Accordingly, the Plaintiffs' objection is **SUSTAINED** and the motion **REMANDED** to the Magistrate Judge to determine whether the alter ego requests are overly broad and not stated with reasonable particularity. If the requests themselves are permissible under Rule 26, the Magistrate Judge should consider whether the burden on the Defendants' in producing this discovery outweighs the Plaintiffs' interest in the discovery sought at this stage of the proceedings. In making the second determination, the Defendants need to

establish why producing this discovery is any more burdensome than responding to the balance of the Plaintiffs' First Request for Production now.

## IV. Conclusion

The court finds Plaintiffs' objection has merit.  The Plaintiffs' objection (Filing No. 68) is therefore **SUSTAINED** and the motion **REMANDED** to the Magistrate Judge for proceedings consistent with this Entry.

**SO ORDERED** this 12th day of March 2014.

RICHARD L. YOUNG,  CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.