UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PAIN CENTER OF SE INDIANA, LLC<br>THE PAIN MEDICINE AND<br>REHABILITATION CENTER, P.C. and<br>ANTHONY ALEXANDER, M.D.,<br><br>        Plaintiffs,<br><br>v.<br><br>ORIGIN HEALTHCARE SOLUTIONS<br>LLC; SSIMED (d/b/a SSIMED Holding,<br>LLC); ORIGIN HOLDINGS, INC., a<br>Delaware Corporation;<br>JOHN DOES (1-50) inclusive; and (1-100),<br>inclusive,<br><br>        Defendants. | Case No. 1:13-cv-0133-RLY-DKL |

## DEFENDANTS' ANSWERS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES

Defendants, Origin Healthcare Solutions LLC, SSIMED LLC, and Origin Holdings, Inc., (collectively, "Defendants"), for their Answers to Plaintiffs' First Set of Interrogatories, state as follows:

### GENERAL OBJECTIONS AND RESERVATIONS

1.  Defendants object to Plaintiffs' definitions and instructions to the extent they impose obligations inconsistent with the Federal Rules of Civil Procedure.

2.  Defendants object to each Interrogatory to the extent it inquires about communications or information protected by the attorney-client privilege, the work-product doctrine, or any other applicable privilege.

3.  Defendants' answers have been prepared after reasonable investigation and are based on the best information available to Defendants and its counsel at this time. Defendants

reserve the right to supplement these answers in light of subsequently obtained information and further analysis of materials in this action.

4. Defendants reserve the right to supply additional information and to introduce such information as evidence at trial.

5. Defendants incorporate these General Objections and Reservations into each of the answers set forth below as though fully incorporated therein.

## Interrogatories

### INTERROGATORY NO. 1.

Identify all current or former employees or contractors of Defendants since June 2003 whose job responsibilities included monitoring the status of claims submitted by Plaintiffs using Defendants' software.

### ANSWER:

Defendants object to Interrogatory No. 1 as vague and ambiguous to the extent the phrase "monitoring the status of claims" is undefined. Subject to and without waiving that objection, Defendants state that they did not monitor the status of the claims submitted by Plaintiffs' through Plaintiffs' client center during the course of Plaintiffs' use of Defendants' products to the extent that the phrase suggests that Defendants actively checked Plaintiffs' claims. Instead, Defendants extracted claim data from a file that Plaintiffs' were able to provide on a nightly basis through a closing function. Defendants supplied the extracted claim data to the appropriate carrier. After notification by the carrier in the form of an acknowledgement, Defendants returned the acknowledgement from the carrier to Plaintiffs' client center. The individuals that extracted claim data from Plaintiffs' closing files and/or returned data from various carriers to Plaintiffs' client center included:

- Roberto Arce, who can be contacted through Defendants' counsel;
- Jen Burke, who can be contacted through Defendants' counsel;
- Jacob Cochran, who can be contacted through Defendants' counsel;
- Larry Jeffries, who can be contacted through Defendants' counsel;

2

- Kim Luciuk, who can be contacted through Defendants' counsel; and

- Amy Sadosky, who can be contacted through Defendants' counsel.

## INTERROGATORY NO. 2.

Identify all current or former employees or contractors of Defendants since June 2003 whose job responsibilities included using Defendants' Client Center.

## ANSWER:

Defendants object to Interrogatory No. 2 as vague and ambiguous to the extent the word "using" is undefined. Defendants did not "use" Plaintiffs' client center during the course of Plaintiffs' use of Defendants' products. Instead, Defendants extracted claim data from a file that Plaintiffs' were able to provide on a nightly basis through a closing function. Defendants supplied the extracted claim data to the appropriate carrier. After notification by the carrier in the form of an acknowledgement, Defendants returned the acknowledgement from the carrier to Plaintiffs' client center. The individuals that extracted claim data from Plaintiffs' closing files and/or returned data from various carriers to Plaintiffs' client center included:

- Roberto Arce, who can be contacted through Defendants' counsel;

- Jen Burke, who can be contacted through Defendants' counsel;

- Jacob Cochran, who can be contacted through Defendants' counsel;

- Larry Jeffries, who can be contacted through Defendants' counsel;

- Kim Luciuk, who can be contacted through Defendants' counsel; and

- Amy Sadosky, who can be contacted through Defendants' counsel.

## INTERROGATORY NO. 3.

Identify each person whom Plaintiffs expect to call as an expert witness at the trial of this matter and, for each such person, state:

  a. the subject matter on which the expert is expected to testify;

  b. the substance of the facts and opinions to which the expert is expected to testify; and

3

    c. a summary of the grounds for each such opinion.

**ANSWER:**

Defendants will produce their expert disclosures consistent with the Case Management Order in this case.

**INTERROGATORY NO. 4.**

Without merely referring to Plaintiffs' First Amended Complaint's, please list with specificity all facts, circumstances, inferences, evidence, and witnesses supporting your contention Plaintiffs were adequately trained on Defendants' software.

**ANSSWER:**

Pursuant to Federal Rule of Civil Procedure 33(d), Defendants refer Plaintiffs to documents produced by Defendants as Bates Nos. OHS 000029-000084.

**INTERROGATORY NO. 5.**

Please describe any circumstance where Defendants learned that payers were not receiving claims by customers as a result of incompatibility of Defendants' software/system with payer.

**ANSWER:**

Defendants object to this interrogatory as vague, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object as the interrogatory is not limited to the Plaintiffs, the software in question or the claims made by the Plaintiffs. Subject to and without waiving those objections, Defendants do not specifically recall a circumstance where Defendants learned that payers were not receiving Plaintiffs' claims as a result of incompatibility with the SSIMED Practice Manager Suite or EMRge. If a payer/carrier was not able to process Plaintiffs' claim due to software incompatibility, that issue would have been documented in a help desk ticket. Defendants have previously produced help desk tickets under Bates No. OHS 148845 – OHS 221364.

**INTERROGATORY NO. 6.**

Please describe the process for accessing non-payer submitted claims that are held up in the SSI Client Claim Scrubber database known as the client center.

4

**ANSWER:**

      Defendants object to this interrogatory as vague, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object as the interrogatory is not limited to the Plaintiffs, the software in question or the claims made by the Plaintiffs. Defendants also object to the terms "non-payer submitted claims" and "SSI Client Claim Scrubber database" as vague and ambiguous because these terms are not defined. Defendants further object to these terms as they are not used by Defendants in their literature or training associated with the SSIMED Practice Manager Suite or EMRge products. Subject to and without waiving those objections, Defendants state that Defendants have never sold a product referred to as the SSI Client Claim Scrubber Database. The client center associated with the SSIMED Practice Manager Suite and EMRge products purchased by Pain Center of SE Indiana, LLCpurchased by Pain Center of SE Indiana, LLC is not a client claim scrubber, but is instead a resource by which Plaintiffs can receive claim data from payers from daily closing files and receive acknowledgements from payers. To the extent that Interrogatory No. 6 seeks the identification of the reports through which claim errors are identified, Defendants refer Plaintiffs to the acknowledgments previously produced in native format by Defendants.

**INTERROGATORY NO. 7.**

      Please describe the training process for Plaintiffs on the client claim scrubber database known as the client center.

**ANSWER:**

      Defendants object to the terms "client claim scrubber" as vague and ambiguous because these terms are not defined. Defendants further object to these terms as they are not used by Defendants in their literature or training associated with the SSIMED Practice Manager Suite or EMRge products. Subject to and without waiving those objections, Defendants state that Defendants have never sold a product referred to as the client claim scrubber database. The client center associated with the SSIMED Practice Manager Suite and EMRge products purchased by Pain Center of SE Indiana, LLC is not a client claim scrubber, but is instead a resource by which Plaintiffs can receive claim data from payers from daily closing files and receive acknowledgements from payers. Plaintiffs were trained to use the client center through a combination of on-site trainings at Plaintiffs' facility as well as additional trainings over the phone.

**INTERROGATORY NO. 8.**

      Please describe how Defendants' personnel were trained, who led the training, and when they were trained on the Client Center.

**ANSWER:**

Defendants object to this interrogatory as vague, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object as the interrogatory is not limited to the Plaintiffs, the software in question or the claims made by the Plaintiffs. Subject to and without waiving those objections, Defendants state that when a new employee was hired as a customer service representative that may provide service for the SSIMED Practice Manager Suite and EMRge products purchased by Pain Center of SE Indiana, LLC, the employee is assigned a senior trainer to learn the applications and processes. Generally, each customer service representative completed an initial two week training period with follow-up trainings throughout their employment.

**INTERROGATORY NO. 9.**

Please describe how long rejected claims stay in the Client Center.

**ANSWER:**

Defendants object to this interrogatory as vague, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object as the interrogatory is not limited to the Plaintiffs, the software in question or the claims made by the Plaintiffs. Defendants object to the terms "rejected claims" as vague and ambiguous because these terms are not defined. Defendants further object to these terms as they are not used by Defendants in their literature or training associated with the SSIMED Practice Manager Suite or EMRge products. Subject to and without waiving those objections, Defendants state that Plaintiffs' claims for which an acknowledgement was received from a payer indicating that the claim contains errors stay on the client center associated with the SSIMED Practice Manager Suite and EMRge products purchased by Pain Center of SE Indiana, LLC for at least three (3) years after the payer acknowledgement was received. These errors appear in the acknowledgements uploaded to the client center after receipt from a payer/carrier. Before any of Plaintiffs' acknowledgements were purged from the client center, Plaintiffs were notified that reports are scheduled to be purged. When the acknowledgements were purged, the records were no longer available on Plaintiffs' client center; however, a copy of the acknowledgements was archived.

**INTERROGATORY NO. 10.**

Please describe any automatic deletion process of any rejected claims in the Client Center including when this process began.

**ANSWER:**

Defendants object to this interrogatory as vague, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object as the interrogatory is not limited to the Plaintiffs, the software in question or the claims made by the Plaintiffs. Defendants object to the terms "automatic deletion process" and "rejected claims"

as vague and ambiguous because these terms are not defined. Defendants further object to these terms as they are not used by Defendants in their literature or training associated with the SSIMED Practice Manager Suite or EMRge products. Subject to and without waiving those objections, Defendants state that claims in Plaintiffs' client center associated with the SSIMED Practice Manager Suite and EMRge products purchased by Pain Center of SE Indiana, LLC were not automatically deleted.

**INTERROGATORY NO. 11.**

What is the current dollar amount in the client claim scrubber database known as the client center.

**ANSWER:**

Defendants object to this interrogatory as vague, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object as the interrogatory is not limited to the Plaintiffs, the software in question or the claims made by the Plaintiffs. Defendants object to the terms "client claim scrubber database" as vague and ambiguous because these terms are not defined. Defendants further object to these terms as they are not used by Defendants in their literature or training associated with the SSIMED Practice Manager Suite or EMRge products. Subject to and without waiving those objections, Defendants state that Defendants have never sold a product referred to as the client claim scrubber database. The client center associated with the SSIMED Practice Manager Suite and EMRge products purchased by Pain Center of SE Indiana, LLC was hosted by that entity. Therefore, information regarding the claims submitted by Plaintiffs using that client center is available to Plaintiffs. Defendants also refer Plaintiffs to the closing files and acknowledgements previously produced by Defendants in native format.

**INTERROGATORY NO. 12.**

Please describe or provide the actual dollar amount of claims and number of claims captured within the client claim scrubber database known as the client center by year by all customers.

**ANSWER:**

Defendants object to this interrogatory as vague, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object as the interrogatory is not limited to the Plaintiffs, the software in question or the claims made by the Plaintiffs. Defendants object to the terms "client claim scrubber database" as vague and ambiguous because these terms are not defined. Defendants further object to these terms as they are not used by Defendants in their literature or training associated with the SSIMED Practice Manager Suite or EMRge products. Subject to and without waiving those objections,

Defendants state that Defendants have never sold a product referred to as the client claim scrubber database. The client center associated with the SSIMED Practice Manager Suite and EMRge products purchased by Pain Center of SE Indiana, LLC was hosted by that entity. Therefore, information regarding the claims submitted by Plaintiffs using that client center is available to Plaintiffs. Defendants also refer Plaintiffs to the closing files and acknowledgements previously produced by Defendants in native format.

**INTERROGATORY NO. 13.**

Please describe or provide the actual dollar amount of claims and number of claims captured within the client claim scrubber database known as the client center by year by Plaintiffs.

**ANSWER:**

Defendants object to the terms "client claim scrubber database" as vague and ambiguous because these terms are not defined. Defendants further object to these terms as they are not used by Defendants in their literature or training associated with the SSIMED Practice Manager Suite or EMRge products. Subject to and without waiving those objections, Defendants state that Defendants have never sold a product referred to as the client claim scrubber database. The client center associated with the SSIMED Practice Manager Suite and EMRge products purchased by Pain Center of SE Indiana, LLC was hosted by that entity. Therefore, information regarding the claims submitted by Plaintiffs using that client center is available to Plaintiffs. Defendants also refer Plaintiffs to the closing files and acknowledgements previously produced by Defendants in native format.

**INTERROGATORY NO. 14.**

What is the actual dollar amount of claims and number of claims submitted to the Client Claim Scrubber known as the Client Center database by Year by all customers.

**ANSWER:**

Defendants object to this interrogatory as vague, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object as the interrogatory is not limited to the Plaintiffs, the software in question or the claims made by the Plaintiffs. Defendants object to the terms "client claim scrubber" as vague and ambiguous because these terms are not defined. Defendants further object to these terms as they are not used by Defendants in their literature or training associated with the SSIMED Practice Manager Suite or EMRge products. Subject to and without waiving those objections, Defendants state that Defendants have never sold a product referred to as the client claim scrubber. The client center associated with the SSIMED Practice Manager Suite and EMRge products purchased by Pain Center of SE Indiana was hosted by that entity. Therefore, information regarding the claims

8

submitted by Plaintiffs using that client center is available to Plaintiffs. Defendants also refer Plaintiffs to the closing files and acknowledgements previously produced by Defendants in native format.

**INTERROGATORY NO. 15.**

What is the actual dollar amount of claims and number of claims submitted to the Client Scrubber database known as the Client Center by Year by Plaintiffs.

**ANSWER:**

Defendants object to the terms "client claim scrubber database" as vague and ambiguous because these terms are not defined. Defendants further object to these terms as they are not used by Defendants in their literature or training associated with the SSIMED Practice Manager Suite or EMRge products. Subject to and without waiving those objections, Defendants state that Defendants have never sold a product referred to as the client claim scrubber database. The client center associated with the SSIMED Practice Manager Suite and EMRge products purchased by Pain Center of SE Indiana, LLC was hosted by that entity. Therefore, information regarding the claims submitted by Plaintiffs using that client center is available to Plaintiffs. Defendants also refer Plaintiffs to the closing files and acknowledgements previously produced by Defendants in native format.

**INTERROGATORY NO. 16.**

What is the actual dollar amount of claims and number of claims submitted out of the Client Claim Scrubber database known as the Client Center by year to the payers by all customers.

**ANSWER:**

Defendants object to this interrogatory as vague, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object as the interrogatory is not limited to the Plaintiffs, the software in question or the claims made by the Plaintiffs. Defendants object to the terms "client claim scrubber database" as vague and ambiguous because these terms are not defined. Defendants further object to these terms as they are not used by Defendants in their literature or training associated with the SSIMED Practice Manager Suite or EMRge products. Subject to and without waiving those objections, Defendants state that Defendants have never sold a product referred to as the client claim scrubber database. The client center associated with the SSIMED Practice Manager Suite and EMRge products purchased by Pain Center of SE Indiana, LLC was hosted by that entity. Therefore, information regarding the claims submitted by Plaintiffs using that client center is available to Plaintiffs. Defendants also refer Plaintiffs to the closing files and acknowledgements previously produced by Defendants in native format.

## INTERROGATORY NO. 17.

What is the actual dollar amount of claims and number of claims submitted out of the Client Claim Scrubber database known as the Client Center by year to the payers by Plaintiffs.

## ANSWER:

Defendants object to the terms "client claim scrubber database" as vague and ambiguous because these terms are not defined. Defendants further object to these terms as they are not used by Defendants in their literature or training associated with the SSIMED Practice Manager Suite or EMRge products. Subject to and without waiving those objections, Defendants state that Defendants have never sold a product referred to as the client claim scrubber database. The client center associated with the SSIMED Practice Manager Suite and EMRge products purchased by Pain Center of SE Indiana, LLC was hosted by that entity. Therefore, information regarding the claims submitted by Plaintiffs using that client center is available to Plaintiffs. Defendants also refer Plaintiffs to the closing files and acknowledgements previously produced by Defendants in native format.

## INTERROGATORY NO. 18.

What is the actual dollar amount of claims and number of claims submitted out of the Client Claim Scrubber database known as the Client Center by Plaintiffs to the payers.

## ANSWER:

Defendants object to the terms "client claim scrubber database" as vague and ambiguous because these terms are not defined. Defendants further object to these terms as they are not used by Defendants in their literature or training associated with the SSIMED Practice Manager Suite or EMRge products. Subject to and without waiving those objections, Defendants state that Defendants have never sold a product referred to as the client claim scrubber database. The client center associated with the SSIMED Practice Manager Suite and EMRge products purchased by Pain Center of SE Indiana, LLC was hosted by that entity. Therefore, information regarding the claims submitted by Plaintiffs using that client center is available to Plaintiffs. Defendants also refer Plaintiffs to the closing files and acknowledgements previously produced by Defendants in native format.

## INTERROGATORY NO. 19.

Who is responsible for monitoring the number of claims and dollar amount of claims sitting in the Client Claim Scrubber database known as the Client Center.

**ANSWER:**

Defendants object to the terms "client claim scrubber database" as vague and ambiguous because these terms are not defined. Defendants further object to these terms as they are not used by Defendants in their literature or training associated with the SSIMED Practice Manager Suite or EMRge products. Subject to and without waiving those objections, Defendants state that Defendants have never sold a product referred to as the client claim scrubber database. The client center associated with the SSIMED Practice Manager Suite and EMRge products purchased by Pain Center of SE Indiana, LLC was hosted by that entity and it was Plaintiffs' responsibility to monitor their client center. Accordingly, information regarding the claims submitted by Plaintiffs using the client center is available to Plaintiffs. Defendants also refer Plaintiffs to the closing files and acknowledgements previously produced by Defendants in native format. Defendants also refer Plaintiffs to Defendants' response to Interrogatory No. 1.

**INTERROGATORY NO. 20.**

Please describe the regulations in the United States and abroad, such as regulations in the areas of health care fraud, e-prescribing, claims processing and transmission, medical devices, the security and privacy of patient data and interoperability standards, that may be directly or indirectly applicable to your software and the business practices of your clients utilizing said software.

**ANSWER:**

Defendants object to this interrogatory as vague, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object as the interrogatory is not limited to the Plaintiffs, the software in question or the claims made by the Plaintiffs.

**INTERROGATORY NO. 21.**

Please list your competitors.

**ANSWER:**

Defendants object to this interrogatory as vague, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object as the interrogatory is not limited to the Plaintiffs, the software in question or the claims made by the Plaintiffs.

**INTERROGATORY NO. 22.**

Please describe Defendants process for ensuring errors would not be found in new solution release devices or services before or after commercial release.

**ANSWER:**

Defendants object to this interrogatory as vague, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object as the interrogatory is not limited to the Plaintiffs, the software in question or the claims made by the Plaintiffs. Subject to and without waiving those objections, Defendants state that version source control allows Defendants to isolate items specific to a release which can then be assigned to quality assurance for regressive testing of the application. Software failures created by this new development are isolated and resubmitted back to development for correction. This procedure progresses until all software bugs have been addressed. The release is then quarantined and the release is finalized and moved into production.

**INTERROGATORY NO. 23.**

Please describe any circumstance involving Defendants that may lead to Defendants potentially being excluded from Medicare, Medicaid or other government-funded health care program.

**ANSWER:**

Defendants object to this interrogatory as vague, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object as the interrogatory is not limited to the Plaintiffs, the software in question or the claims made by the Plaintiffs. Subject to and without waiving those objections, Defendants state that Defendants submitted claims on behalf Plaintiffs to Medicare, Medicaid, or other government funded health care programs. Plaintiffs could potentially be excluded for failure to be properly credentialed with those payers, not Defendants.

**INTERROGATORY NO. 24.**

Please describe the process by year for Defendants achieving certification from The Certification Commission for Healthcare Information Technology (CCHIT).

**ANSWER:**

The certification process by the Certification Commission for Healthcare Information Technology (CCHIT) is an in-depth and comprehensive process involving product design work

12

and development. The Office of the National Coordinator for Health Information Technology (ONC) Certification Program provides a defined process to ensure that Electronic Health Record (EHR) technologies meet the adopted standards and certification criteria to help providers and hospitals achieve Meaningful Use (MU) objectives and measures established by the Centers for Medicare and Medicaid Services (CMS). In collaboration with ONC, the National Institute of Standards and Technology (NIST) has developed the functional and conformance testing requirements, test cases, and test tools to support the proposed health IT certification programs. These conformance test methods (test procedures, test data, and test tools) ensure compliance with the meaningful use technical requirements and standards.

**INTERROGATORY NO. 25.**

Please list any lawsuits involving Defendants as a party.

**ANSWER:**

Defendants object to this interrogatory as vague, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object as the interrogatory is not limited to the Plaintiffs, the software in question or the claims made by the Plaintiffs. Subject to and without waiving those objections, to the best of Defendants' knowledge, SSIMED was a defendant in a patent lawsuit that involved the SSIMED Practice Manager Suite and/or EMRge products.

**INTERROGATORY NO. 26.**

Please list with specificity all facts, circumstances, inferences, evidence, and witnesses supporting your contention that describe what Defendants' position previously listed on its website that it had "first pass resolution rates of 99%."

**ANSWER:**

Defendants object to this interrogatory as vague as to when "first pas resolution rates of 99%" appeared on Defendants' website, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object as the interrogatory is not limited to the Plaintiffs, the software in question or the claims made by the Plaintiffs.

**INTERROGATORY NO. 27.**

Please describe how the framework or database for Defendants software utilized by Plaintiffs was developed and whether said software was integrated or interfaced.

**ANSWER:**

Defendants created Plaintiffs' database from the ground up. A series of forms asking Plaintiffs for pertinent data to build the practice's setup, such as, providers, service locations, referring physicians, procedure codes, scheduling parameters, etc. were provided to Plaintiffs for completion. The information contained within these forms was used to create Plaintiffs' database. After setup was complete, a database review was conducted with final approval from Plaintiff that set up was complete. The software was integrated, there were no interfaces involved.

**INTERROGATORY NO. 28.**

Please describe with specificity all facts, circumstances, inferences, evidence, and witnesses indicating Plaintiffs difficulty "closing" data also known as transmitting data from its practice to Defendants database.

**ANSWER:**

Defendants do not specifically recall that Plaintiffs' had difficulty closing or transmitting data from closings. Any such difficulty would have been documented in a help desk ticket. Defendants produced help desk tickets under Bates No. OHS 148845 – OHS 221365.

**INTERROGATORY NO. 29.**

Please describe with specificity all facts, circumstances, inferences, evidence, and witnesses indicating Defendants' interfacing problems and/or problems related to data interchange with other vendors.

**ANSWER:**

Defendants do not specifically recall that Plaintiffs' had interfacing problems or problems related to data interchange with other vendors. Any such problems would have been documented in a help desk ticket. Defendants produced help desk tickets under Bates No. OHS 148845 – OHS 221365.

## VERIFICATION

I, Frank Riccio, affirm that I am the Vice President of Operations of Origin Healthcare Solutions, LLC and that I am authorized by Origin Healthcare Solutions, LLC to sign this verification. Defendants' Answers to Plaintiffs' First Set of Interrogatories were gathered from a variety of sources and are not based upon my personal knowledge but are true and correct to the best of my knowledge, information, and belief.

          Origin Healthcare Solutions, LLC

By: _____/s/ Frank Riccio_____
          Frank Riccio

Date: _____9/8/2014_____

As to objections:

Respectfully submitted,

FROST BROWN TODD LLC

By: _____
    James Dimos, #11178-49
    Michele Lorbieski Anderson, #28923-49
    Attorneys for Defendants
    Origin Healthcare Solutions LLC;
    SSIMED (d/b/a SSIMED Holding, LLC);
    Origin Holdings, Inc.

15

## **VERIFICATION**

I, Frank Riccio, affirm that I am the Vice President of Operations of Origin Healthcare Solutions, LLC and that I am authorized by Origin Healthcare Solutions, LLC to sign this verification. Defendants' Answers to Plaintiffs' First Set of Interrogatories were gathered from a variety of sources and are not based upon my personal knowledge but are true and correct to the best of my knowledge, information, and belief.

Origin Healthcare Solutions, LLC

By: _____
       Frank Riccio

Date: _____

As to objections:

Respectfully submitted,

FROST BROWN TODD LLC

By: _____
James Dimos, #11178-49
Michele Lorbieski Anderson, #28923-49
Attorneys for Defendants
Origin Healthcare Solutions LLC;
SSIMED (d/b/a SSIMED Holding, LLC);
Origin Holdings, Inc.

15

## CERTIFICATE OF SERVICE

    Service of the foregoing was made by placing a copy of the same into the United States Mail, first class postage prepaid, this 8th day of September, 2014, addressed to:

Volney Brand
BRAND LAW PLLC
5001 Spring Valley, Suite 400E
Dallas, TX 75244

E. Carlos Tanner, III
TANNER & ASSOCIATES, LLC
P. O. Box 3709
Jackson, MS 39207

Patrick W. Harrison
Patrick W. Harrison, Attorney at Law
1026 Jackson Street
P. O. Box 387
Columbus, IN 47202-0387

FROST BROWN TODD LLC
P.O. Box 44961
Indianapolis, IN   46244-0961
Phone: 317-237-3800
Fax:     317-237-3900
jdimos@fbtlaw.com
manderson@fbtlaw.com

_____
Michele Lorbieski Anderson

0104393.0603739   4833-6977-3084v1

16