UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PAIN CENTER OF SE INDIANA, LLC<br>THE PAIN MEDICINE AND<br>REHABILITATION CENTER, P.C. and<br>ANTHONY ALEXANDER, M.D.,<br><br>           Plaintiffs,<br><br>      v.<br><br>ORIGIN HEALTHCARE SOLUTIONS<br>LLC; SSIMED (d/b/a SSIMED Holding,<br>LLC); ORIGIN HOLDINGS, INC., a<br>Delaware Corporation;<br>JOHN DOES (1-50) inclusive; and (1-100),<br>inclusive,<br><br>           Defendants. | Case No. 1:13-cv-0133-RLY-DKL |

**PLAINTIFFS' MEMORANDUM BRIEF IN SUPPORT OF MOTION TO COMPEL**

COMES NOW, The Pain Center of SE Indiana, LLC, The Pain Medicine and Rehabilitation Center, P.C. and Anthony Alexander, MD ("Plaintiffs"), by and through counsel and pursuant to Rule 37 the Federal Rules of Civil Procedure, and the Court's inherent authority moves this Court for an Order requiring Origin Healthcare Solutions, LLC; SSIMED (d/b/a SSIMED Holding, LLC) and Origin Holdings, Inc., a Delaware Corporation ("Defendants") to sufficiently respond to Plaintiffs' First Set of Interrogatories, to compel the redeposition of Mrs. Demitra Hilton and the remainder of Mrs. Joy Deckard's deposition.[1] In support, Plaintiffs show unto the Court as follows:

---

[1] In as much as the Court categorized other issues that may have been mentioned in the status conference, Plaintiffs only mentioned the aforementioned categories as ripe for review. The parties discussed the possibility of future depositions including resuming the depositions of Defendants corporate designees. Defendants responded that the

## INTRODUCTION

On September 8, 2014, Defendants served their answers to Plaintiffs' First Set of Interrogatories. (Ex. A). Defendants' provided grossly incomplete answers to Plaintiffs' interrogatories. As such, the parties met and conferred and reached no agreement on a majority of Defendants interrogatory responses. In addition, there exists a dispute as to whether Mrs. Deckard's deposition should continue.

## LEGAL STANDARD

As this Court is well aware, parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. Fed. R. Civ. P. 26(b)(1). If a party fails to completely answer or respond to such required disclosure, Rule 37 permits any other party to move to compel said disclosure pursuant to Fed. R. Civ. P. 37(a)(2)(B). Notably, a court has broad discretion in deciding discovery matters, including a motion to compel discovery. See *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 646 (7th Cir. 2001).

## DISCUSSION

A. Defendants Responses to Plaintiffs' First Set of Interrogatories Are Deficient

Defendants made a number of primarily boilerplate objections coupled with references to categories of documents in response to Plaintiffs' interrogatories. "However, each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). And incorporation by reference is not a responsive answer. *Cont'l Ill.*

---

District Judge ruling on Plaintiffs' appeal prohibited this and this Court corrected Defendants on this point. In doing so, this Court added that Plaintiffs should have or could have moved for additional time to depose the corporate witnesses prior to the start of those depositions. Plaintiffs responded that although the District Judge did not credit this argument, there was no way to do so given there was no confirmation on which topics or witnesses would be present until the morning of the deposition. Because the Court mentioned that the presumptive limit for a 30(b)(6) deposition was only seven hours, Plaintiffs also informed this Court the District Judge did agree that the presumption is that the seven hour rule applies to each designated witness. That said, Defendants needed the reminder that Plaintiffs are entitled to move for additional time per the District Court's ruling. Plaintiffs also indicated the difficulty in coordinating discovery and depositions given the "alter ego" labeled discovery was still outstanding despite Plaintiffs' requests of this discovery nearly two years ago.

*Nat. Bank & Trust Co. of Chicago v. Caton*, 136 F.R.D. 682, 686 (D. Kan. 1991); see also *Magarl, LLC et al. v. Crane Con. et al.*, No. 1:03-cv-01255-JDT-TWL, at *6-7 (S.D. Ind. 2004)("It is well established that an answer to an interrogatory…should not refer to...or other documents, or to other interrogatories"(internal citation and quotations omitted).

<u>Interrogatory No. 4</u>.-Defendants refused to answer Plaintiffs' request that Defendants list the facts, circumstances and witnesses illustrating that Plaintiffs were adequately trained on Defendants' software.  This is clearly relevant to the claims asserted by Plaintiffs.  However, Defendants offered boilerplate objections and still failed to meet their obligations under the discovery rules. They instead referred Plaintiffs to their nonresponsive document production.

<u>Interrogatory No. 5</u>-Defendants also refused to respond to the this interrogatory involving circumstances when Defendants learned that payers were not receiving claims by customers as a result of incompatibility of Defendants' software/system with payer.  Instead, Defendants again wrongfully referred Plaintiffs to their document production.  Moreover, the referenced production involves customer complaints and is not responsive to this question.

<u>Interrogatory No. 6</u>-Defendants failed to describe the process for accessing the client center, and referred Plaintiffs to nonresponsive document production.  This information is relevant to the difficulties Plaintiffs experienced with their software and it is incumbent of Defendants to describe their own process.

<u>Interrogatory No. 7-</u>  Defendants failed to provide any level of detail regarding the training process for Plaintiffs on the client center.  Defendants instead claim that "Plaintiffs were trained to use the client center through a combination of on-site trainings at Plaintiffs' facility as well as additional trainings over the phone." As shown below, this response is deficient.

Interrogatory No. 8-Defendants refused to answer how Defendant's personnel were trained, who led the training, and when they were trained on the client center.  Defendants should indicate if they are unable to provide more information, however during the meet and confer conference Defense Counsel alluded to researching adequate responses.  Plaintiffs haven't received any.

Interrogatory No. 9.-Defendants responded, in part, to Plaintiffs request about how long rejected claims stay in the Client Center.  According, to Defendants, they purged claims at least 3 years after the acknowledgements were received.  In the meet and confer conference, Counsel Anderson explained there were two purges but failed to provide the dates of these purges.  Counsel Anderson failed to follow-up with this information or provide any specificity as to how long beyond three years the acknowledgments remained on the Client Center.  Plaintiffs seek this information as it is relevant to what type of system existed to manage pending claims.  Furthermore, Plaintiffs seek this information regarding purges be provided in the response to the interrogatory.

Interrogatory No. 11-Defendants initially refused to answer the current dollar amount in the client center.  In the meet and confer conference, Counsel Anderson claimed she didn't understand the question initially but that she would follow-up.  Plaintiffs never received a response.  This information is relevant to Defendants' responsibilities to track pending claims in the client center for its customers.  Again the client center is substantially relevant to the problems experienced by Plaintiffs.  This information should be readily available to Defendants

Interrogatory No. 12- Defendants initially refused to answer the actual dollar amount of claims and number of claims within the client center by year by all customers. This information is relevant to Defendants' responsibilities to track pending claims in the client center for its

4

customers.  Again, the client center is substantially relevant to the problems experienced by Plaintiffs.  Counsel Anderson failed to follow-up with this information as well.

<span style="text-decoration: underline;">Interrogatory No. 13</span>-Defendants failed to provide the actual dollar amount of claims and number of claims captured within the client center year by year by Plaintiffs.  Instead, Defendants direct Plaintiffs to sift through Defendants irrelevant and confusing document production.  This information is relevant to Defendants' responsibilities to track pending claims in the client center including whether this was done for Plaintiffs.  Again, the client center is substantially relevant to the problems experienced by Plaintiffs.  Plaintiffs are entitled to responses to this interrogatory.

<span style="text-decoration: underline;">Interrogatory No. 14 and 15</span>.  Defendants refused to answer the actual dollar amount of claims and number of claims submitted to the client center year by year by all customers or by Plaintiffs.  This request is different in that it involves the amount of claims submitted to the client center versus held in the client center.  This information is relevant to Defendants' responsibilities to track pending claims in the client center for its customers.  Again the client center is substantially relevant to the problems experienced by Plaintiffs.

<span style="text-decoration: underline;">Interrogatory No. 16 and 17</span>.  Defendants refused to answer the actual dollar amount of claims and number of claims submitted out of the Client Center by year to the payers by all customers or Plaintiffs.  This request is different in that it involves the amount of claims submitted from the client center to the payors.  This information is relevant to Defendants' responsibilities to track pending claims in the client center for its customers as well as the processing of these claims.  Again the client center is substantially relevant to the problems experienced by Plaintiffs.

<u>Interrogatory No. 18</u>-Defendants refused to answer the actual dollar amount of claims and number of claims submitted out the Client Center by Plaintiffs to Payers. This request is different in that it involves the amount of claims submitted from the client center to the payors and not limited by year. This information is relevant to Defendants' responsibilities to track pending claims in the client center for its customers as well as the processing of these claims. Again the client center is substantially relevant to the problems experienced by Plaintiffs.

<u>Interrogatory No. 19</u>-Defendants refused to answer who was responsible for monitoring the number of claims and dollar amount of claims sitting in the Client Center. Defendants referred Plaintiffs to their response to Interrogatory No. 1 which is an entirely different question and not proper based on the aforementioned rules.

<u>Interrogatory No. 21</u>-Defendants refused to list their competitors. There is no basis for Defendants to refuse to list who they are in direct or indirect competition with. It is clearly relevant to their motives and Plaintiffs claims of fraud and breach of contract

<u>Interrogatory No. 24</u>-Defendants failed to describe the process by year for Defendants achieving certification from The Certification Commission for Healthcare Information Technology (CCHIT). Instead, Defendants provided a global overview of CCHIT in general. Defendants failed to list what information, protocols, or procedures they presented for any year.

<u>Interrogatory No. 26</u>-Defendants refused to list any facts supporting their website representation that it had "first pass resolution rates of 99%." This is clearly relevant to Plaintiffs claims of fraud.

<u>Interrogatory No. 29</u>-Defendants refused to list any facts or circumstances indicating Defendants' interfacing problems and/or problems related to data interchange with other

vendors. Defendants elected to narrow the question to Plaintiffs and refer Plaintiffs to nonresponsive help desk tickets involving some of Plaintiffs' complaints.

Defendants refused to provide sufficient responses to Plaintiffs' interrogatories with no valid legal or factual basis. As such, Plaintiffs are entitled to legally sufficient responses to each of the listed interrogatories.

B. Demitra Hilton Failed to Provide Responses to Plaintiffs' Cross-Examination and Should be Redeposed

In addition, Plaintiffs seek to compel the remainder of Demitra Hilton's deposition. During cross-examination, this witness failed to answer a litany of Plaintiffs Counsel Brand's questions including the following:

> BRAND: Now, who—what were the names of those offices?
>
> HILTON: I will not give the doctor's name. It doesn't have anything to do with this case.
>
> BRAND: So you're refusing to answer my question?
>
> HILTON: I will not give you the names of the doctors. It has nothing to do with Anthony Alexander. Next question, please.
>
> BRAND: And who was that?
>
> HILTON: None of your business.
>
> BRAND: So you're refusing to answer who the physician was you—
>
> HILTON: I think I've already told you this…..Yes.
>
> BRAND: Okay. So the only physicians who you will tell me you worked for is Doctor Alexander whom you were terminated by, and who else?
>
> HILTON: I'm not going to give you their names. Next question.

BRAND: Do you have any other doctors you were independently contracting for when you worked with Doctor Alexander?

HILTON: Yes

BRAND: And who were those?

HILTON: I plead the Fifth…

BRAND: Now, you were contracting with these other physicians. Was that on a part-time basis?

HILTON: Again, I'm not going to discuss what I did outside of PMRC. It's none of your business.

BRAND: So he would have seen you accessing these notes every day, right?

HILTON: I plead the Fifth.

BRAND: You don't know if it was one year or ten, do you?

HILTON: ….I'll plead the Fifth to this question.

BRAND: Michelle, this is getting difficult to have a real opportunity of cross-examination

BRAND: So what I'm saying to you is at this point, if this witness continues to , you know, disallow me a real opportunity to cross-examine her, this deposition is going to be a real point of contention as far as its admissibility, as far as I'm concerned.

BRAND: Okay. So the first time you represented that it's plaintiffs' own fault came during these discussions with lawyers after you had been terminated?

HILTON: I'm not gong to answer that one


Dep. Ex. B [pgs 196, 201, 202, 205, 208, 212, 213, 214, 218, 219].

8

At various points, Counsel Brand even warned Defendants Counsel Anderson that the deposition needed to be continued until court assistance was available based on her refusal to answer questions very early into the cross-examination. Indeed, this witness shut down entire lines of questioning and Plaintiffs should be entitled to an opportunity to cross-examine this witness without her picking and choosing which areas she chooses to testify. Moreover, this witness hurled insults and profane language at Plaintiffs' counsel during the deposition as well.

C. Joy Deckard's Deposition is Incomplete and This Witness Deposition Should Continue

Plaintiffs seek to finish Joy Deckard's deposition. The record is very clear that the weather was poor on the day of the deposition. In fact, it was sleeting earlier that morning and afternoon. At one point, co-counsel recommending wrapping up the deposition, however, had it been necessary to finish on that day, Counsel Brand was prepared to do so. Counsel Anderson caught wind of this, and attempted to seize the opportunity to end Brand's examination of this deposition by influencing the witness to demand completion of her deposition on that evening. When Counsel Brand sought clarity from the witness, Counsel Anderson improperly interrupted Counsel Brand's questions to influence this witness's decision making. Even the witness referenced the weather, but after the short recess Brand conferred with co-counsel this witness became firmer in her response that she wanted to continue. Based on the weather, Plaintiffs' counsel had no desire to risk black ice and informed the parties of his desire to seek leave to complete his remaining questions. Plaintiffs counsel has since spoken with Mrs. Deckard and she provided her preference for certain days to complete this deposition.
Dep. Ex. C [pgs 218-225].

9

CONCLUSION

Based on the foregoing factual circumstances, relevant law, and procedural posture of this case, Plaintiffs respectfully request that the Court require Defendants to produce sufficient responses to Plaintiffs' responses, and completion of the depositions of Mrs. Hilton and Mrs. Deckard.

Dated: February 13, 2015

Respectfully submitted,

**BRAND LAW, PLLC**

/s/ Volney Brand
Volney Brand, Tx. # 24073253

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing was electronically served upon the following Counsel:

James Dimos               jdimos@fbtlaw.com
Michelle Anderson         manderson@fbtlaw.com
Darren Craig              dcraig@fbtlaw.com

via the Court's ECF on the 13th day of February 2015.

Volney Brand
**BRAND LAW PLLC**
5001 Spring Valley Road
400 East Tower
Dallas, Texas  75244
Telephone:  (214) 932-1472
Facsimile:  (214) 932-1473
E-mail:  volney@brandlaw.us.com


E. Carlos Tanner, III, Esq. (MS Bar No. 102713)
**Tanner & Associates, LLC**
P.O. Box 3709
Jackson, Mississippi 39207
Carlos.tanner@thetannerlawfirm.com
601.460.1745 (telephone)
662.796.3509 (facsimile)


Patrick W. Harrison
**Patrick W. Harrison, Attorney at Law**
1026 Jackson St. PO Box 387
Columbus, IN 47202-0387
Office: 812-375-0911
Fax: 812-375-0951