# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA,
### INDIANAPOLIS DIVISION

| | |
|---|---|
| **PAIN CENTER OF SE INDIANA, LLC,** *et al.***,** | |
| **Plaintiffs,** | |
| *vs.* | **CAUSE NO. 1:13-cv-133-RLY-DKL** |
| **ORIGIN HEALTHCARE SOLUTIONS, LLC,** *et al.***,** | |
| **Defendants.** | |

## ENTRY

### *Plaintiffs' Motion To Quash the Subpoenas Issued to Jeff Leis* [doc. 307]

On August 31, 2015, Plaintiffs served on Defendants disclosures for two expert witnesses, Mark Anderson and Jeffrey W. Leis. [Doc. 309-2.] Mr. Leis is a C.P.A. employed by plaintiff Pain Medicine & Rehabilitation Center, where he is responsible for "financial reporting and cash management." [Doc. 309-2, p. 33.] The subject matter on which Plaintiffs expected Mr. Leis to testify was "turnover ratios, cash changes, lost opportunities and lost profits," and Plaintiffs' disclosure summarized Mr. Leis's expected testimony as follows:

> Jeff Leis is expected to testify that Plaintiffs lost over $102,000,000 in lost opportunities including growth opportunities due to Defendants' conduct. Jeff Leis is expected to testify about lost profits associated with physician turnover and lost opportunities associated with surgery centers; MRI; and a laboratory due to Defendants' conduct.

1

*Id.*[1]

On September 11, 2015, Defendants served on Mr. Leis a subpoena *duces tecum* for production by September 20, 2015, and a subpoena *ad testificandum*, for a deposition on October 30, 2015. *Minute Entry, Telephonic pretrial conference, October 16, 2015* [doc. 305] ("*Oct. 16 Minute Entry*"), ¶ 1. On September 23, 2015, Plaintiffs informed Defendants that they were withdrawing their designation of Mr. Lies as an expert witness.[2] Defendants withdrew their documents subpoena to him on September 28, 2015. *Id.* Defendants disclosed their expert, Angela R. Morelock, on September 30, 2015. *Defendants' Notice of Expert Disclosure* [doc. 297].

On October 5, 2015, Defendants served on Mr. Leis a new subpoena *duces tecum* for production on October 16, 2015, [doc. 309-7], seeking documents relevant to his previously disclosed expert opinion, *Oct. 16 Minute Entry*, ¶ 1, p. 2. On October 9, 2015, the Court ordered Plaintiffs to make their (final) expert disclosures within seven days and

---

[1] Two of the issues on which Mr. Campbell, the other expert that Plaintiffs' disclosed, was asked to opine are (1) "to determine if the practice was financially harm [*sic*] because of software issues or if the plaintiff was financially harm [*sic*] because of inadequate training or workflow processes once the charges are captured" and (2) "To determine if Plaintiffs were defrauded". *Expert Report of Mark Anderson* [doc. 309-2], at 2 (doc. 309-2, p. 5).

[2] During a pretrial conference on August 28, 2015, Plaintiffs' counsel suggested that he might want an extension of his expert-disclosures deadline, which, at that time, was August 31, 2015 (the set deadline of August 30, 2015 was a Sunday). *Minute Entry, Telephonic pretrial conference, August 28, 2015* [doc. 280]; *Entry and Order* [doc. 254]. The Court reminded Plaintiffs' counsel that a motion was required. *Id.* Three days later, on their deadline, Plaintiffs made their above-described expert disclosures and also moved for an extension of their deadline. [Docs. 281 and 282.] On September 2, 2015, the Court suspended Plaintiffs' expert-disclosures deadline pending determination of Defendants' motion to extend the dispositive-motions deadline. *Interim Order* [doc. 285]. (The Court suspended the dispositive-motions deadline when Defendants filed their motion. *Interim Order* [doc. 276].) Defendants' deadline for making their expert disclosures is thirty days after Plaintiffs disclose their experts. *Entry and Order* [doc. 254].

Defendants to make their disclosures seven days later.  *Order* [doc. 300].  On October 16, 2015, Plaintiffs made their final expert disclosures, again designating Mark Anderson and replacing Mr. Leis with Kaycea Campbell.[3]  *Plaintiffs' Notice of Expert Disclosure* [doc. 304]. On that same date, the Court set the expert-discovery deadline to November 20, 2015. *Oct. 16 Minute Entry*, ¶ 3.  On October 23, 2015, Defendants made their final disclosure of Ms. Morelock as their expert witness.  *Defendants' Supplemental Notice of Expert Disclosure* [doc. 306].

During the October 16, 2015 pretrial conference, Plaintiffs opposed Defendants subpoenas to Mr. Leis and the Court ordered Plaintiff to file a motion to quash.  *Oct. 16 Minute Entry*, ¶ 1, p. 2.  The Court also vacated Mr. Leis's noticed deposition date of October 30, 2015, on Plaintiffs' counsel's advice of Mr. Leis's unavailability and ordered the parties to find another date.  *Id.*

On or about October 23, 2015, Defendants served a new subpoena *ad testificandum* on Mr. Leis for a deposition on November 16, 2015.  [Doc. 309-10.]  On the same date, Plaintiffs filed the present motion to quash the deposition and production subpoenas on

---

[3] Ms. Campbell was retained "to calculate lost profit" related to the parties' dispute; "to opine on whether the alleged damages related to the lost opportunities are reasonable and to calculate the amount of lost profits Pain Center can recover from the alledged [*sic*] wrongful act by Origin."  *An Evaluation Lost Profits* [doc. 309-11], at 2.  Her report is two-fold:  (1) an opinion on whether there is a link between Origin's "bad act" and the "loss of business ventures suffered by Pain Center;" and (2) a calculation of the lost profits.  *Id.*  She examined lost profits in five areas:  a urine drug-test lab, an MRI facility, an ambulatory surgery center, a surgery center investment opportunity, and the loss of key personnel.  *Id.*

Mr. Leis; Defendants responded, Plaintiffs replied, and the matter was discussed during the November 5, 2015, pretrial conference.  It is now ready for decision.

Defendants state that they want discovery from Mr. Leis because he was named as one of Plaintiffs' experts on lost profits, Plaintiffs disclosed his opinion and supporting material,[4] and because, during his fact deposition, he denied any knowledge of lost profits.  *Defendants' Opposition to Plaintiffs' Motion To Quash etc.* [doc. 309] ("*Response*"); *Oct. 16 Minute Entry*, ¶ 1, p. 2.  Plaintiffs argue that the discovery is improper for several reasons.  First, Plaintiffs did not tender any expert report or opinion by Mr. Leis and Defendants' subpoenas are, thus, merely an overreaction to a "chart" tendered by Plaintiffs with their expert disclosure regarding Mr. Leis.  When the Court suspended and then set new deadlines for expert disclosures after Plaintiffs, "[i]n an abundance of caution," made their initial disclosures, Plaintiffs "made it clear" to Defendants that Mr. Leis would not provide expert testimony or a report.  Second, Plaintiffs contend that their "inadvertent" disclosure of the "charts" and/or Mr. Leis as an expert have not prejudiced Defendants.  Third, they contend that Defendants admit that Mr. Leis's knowledge of lost profits was already covered during his fact depositions, so additional testimony is unnecessary.  Fourth, Plaintiffs assert that Defendants have not shown the "exceptional circumstances" that are required in order to depose experts under Fed. R. Civ. P. 26(b)(4)(D).  Fifth, they assert that any communications that Mr. Leis had with their

---

[4] Mr. Leis estimated lost revenues of $102,330,939.  [Doc. 309-2, pp. 34 and 33 ("over $102,000,00").]  Ms. Campbell estimated lost profits of $50,200,604.  *An Evaluation of Lost Profits* [doc. 309-11, pp. 1, 2, 20].

current experts or other individuals at counsel's direction for the purpose of Ms. Campbell's expert testimony are privileged.[5]  Finally, Plaintiffs argue that the documents and testimony sought from Mr. Leis are unduly burdensome, duplicative, and irrelevant because Defendants will have an opportunity to cross-examine Ms. Campbell, Plaintiffs' current lost-profits expert, "on the very data submitted when Leis was initially designated."  (*Memorandum of Law in Support of Motion To Quash of Jeff Leis* [doc. 308] ("*Plaintiff's Brief*"), at 1-2.)  Plaintiffs did not identify any specific deposition topic or request for production as objectionable; their objections are general.

Defendants respond that, because Mr. Leis was not retained or specially employed to provide expert testimony in this case and he is employed by Plaintiffs not regularly to give expert testimony, he was not required to provide an expert report under Fed. R. Civ. P. 26(a)(2)(B).  Plaintiffs were required to provide only the subject matter on which Mr. Leis would provide expert testimony and a summary of the facts and opinions to which he is expected to testify, Rule 26(a)(2)(C).  Thus, the fact that the "charts" that Plaintiffs provided with his disclosure as an expert might not amount to an "expert report" under Rule 26(a)(2)(B) is immaterial.  The Court agrees.

Defendants argue that, contrary to Plaintiffs' assertion, Plaintiffs clearly disclosed an expert opinion by Mr. Leis.  The Court, again, can quickly agree.  As quoted above, Plaintiffs' disclosure for Mr. Leis states that "Jeff Leis is expected to testify that Plaintiffs

---

[5] Plaintiffs do not identify the privilege.  Presumably, it is either the attorney-client or work-product privileges, or both.

lost over $102,000,000 in lost opportunities including growth opportunities due to Defendants' conduct," and more opinions. [Doc. 309-2, p. 33.] The opinions are also supported and explained by the accompanying "charts" that Plaintiffs disclosed. Plaintiffs' cover e-mail describes Mr. Anderson and Mr. Leis as their designated expert witnesses. [Doc. 309-2, p. 1.] There is no doubt that Plaintiffs disclosed Mr. Leis as an expert witness on the subject of lost profits and lost revenue.

Defendants argue that they need not show "exceptional circumstances" in order to depose Mr. Leis because that requirement applies only to "an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial." Fed. R. Civ. P. 26(b)(4)(D). The Court agrees. As noted above, Mr. Leis was not retained or specially employed as an expert and he was disclosed as an expert to provide expert testimony.

The Court agrees with Defendant's argument that Mr. Leis' testimony during his fact deposition that he had no knowledge of Pain Center's lost profits justifies Defendants conducting another deposition of him, but barely so. Without more context, the Court cannot determine whether he meant simply that he had not gathered all the data and performed the necessary calculations to arrive at total figures. In order to arrive at his expert opinion, he presumably gathered the data and performed the calculations. A re-examination to clarify this point should not take very long.

Plaintiffs' primary argument relies on *Davis v. Carmel Clay Schools,* No. 1:11-cv-771-SEB-MJD, *Order Granting Defendant's Motion To Quash Subpoena to Darren Miller,* 2013 WL 2159476 (S.D. Ind., May 17, 2013), which held that a party can withdraw an identified expert before his report is disclosed and not lose the protection of Rule 26(b)(4)(D).  Under that subparagraph, a party may "discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness as trial" only "on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means."  Plaintiffs argue that, because Mr. Leis "did not disclose any opinions or expert report," the facts known or opinions held by him are protected by Rule 26(b)(4)(D) and Defendants have not shown exceptional circumstances to discover them.

*Davis* and two other decisions from this district — *Meharg v. I-Flow Corp.*, No. 1:08-cv-184-DFH-TAB, *Order on Defendants' Motion To Compel,* 2009 WL 1867696 (S.D. Ind., June 26, 2009), and *United States v. Cinergy Corp.*, No. 1:99-cv-1693-LJM-JMS, *Order on Docket Nos. 1611 & 1615,* 2009 WL 1124969 (S.D. Ind., April 24, 2009) — largely are based on the analysis of the Court of Appeals for the Seventh Circuit in *S.E.C. v. Koenig,* 557 F.3d 736 (7th Cir. 2009).  In *Koenig,* the defendant, Koenig, hired an expert, identified him as a testifying expert, produced his report, and the expert was deposed by the plaintiff, the Securities and Exchange Commission ("SEC").  As it transpired, Koenig did not call the expert at trial or introduce his report, but the SEC introduced the expert's videotaped

deposition at trial.  On appeal, Koenig argued that the district court should have excluded the expert's evidence because the SEC had not included the expert on its preliminary witness lists, before the end of discovery.

The Seventh Circuit noted that Koenig's argument was not that he was surprised by the SEC's counter use of his own previously disclosed expert — although the SEC had not included Koenig's expert on its preliminary witness list, it had included him on its final trial-witness list for the pretrial order — but that the SEC's failure to disclose the expert as a potential witness earlier had deprived Koenig of the opportunity to withdraw the expert and, thus, prevent the SEC from using him.  The Seventh Circuit held that a party's withdrawal of its expert witness after disclosure does not compel exclusion of the expert's opinion if introduced by another party:

> A witness identified as a testimonial expert is available to either side; such a person can't be transformed after the report has been disclosed and a deposition conducted, to the status of a trial-preparation expert whose identity and views may be concealed.  See Fed.R.Civ.P. 26(b)(4)([D]). Disclosure of the report ends the opportunity to invoke confidentiality.  So if the SEC has identified [the expert] as an expert it might call, nothing Koenig could have done would have blocked the SEC from using [the expert's] conclusion.

*Koenig*, 557 F.3d at 744.

A key question discussed in the subsequent cases, and argued by Plaintiffs here, is whether, under *Koenig*, both an expert's identity and his expert report must be disclosed in order to forfeit the protections of Rule 26(b)(4)(D) on withdrawal of an expert.  The Court agrees with Defendants that this question does not arise in the present case because

Mr. Leis was not retained or specially employed by Plaintiffs to provide expert opinions and his duties as an employee apparently do not regularly involve giving expert testimony.  This fact moots the question in two ways:  first, Mr. Leis was not required to provide a written report under Fed. R. Civ. P. 26(a)(2)(B) and (C), and, second, the protection of Rule 26(b)(4)(D), by its terms, does not apply to an expert, like Mr. Leis, who was not retained or specially employed by Plaintiffs in anticipation of litigation or to prepare for trial.

Plaintiffs made their expert disclosures in compliance with the case management plan, as amended, and Rule 26(a)(2).  For Mr. Leis, this disclosure included his identity and the subject matter on which he was expected to provide expert evidence and a summary of the facts and opinions to which he was expected to testify.  This disclosure rendered Mr. Leis available for expert discovery by Defendants, despite Plaintiffs' subsequent withdrawal, for the following reasons.  First, there does not appear to be any reason not to apply *Koenig*'s apparent rationale — that disclosure of a Rule 26(a)(2)(B) expert's views through disclosure of his report forfeits any work-product-like protection of Rule 26(b)(4)(D) — also to the situation where a Rule 26(a)(2)(C) expert's views are disclosed by the Rule 26(a)(2)(C) disclosure of the summary of the facts known and opinions held by the expert.

Second, although *Koenig* did not address the situation of a Rule 26(a)(2)(C) expert (or a Rule 26(a)(2)(B) expert whose identity only has been disclosed), it is reasonable to find that the required disclosures that have been made for such an expert are convincing

9

evidence that the expert opinions elicited from the disclosed expert by the party were not obtained in anticipation of litigation or to prepare for trial, and not for use as evidence at trial, and, thus, are not protected as work product.  While a party many change its mind about calling a disclosed expert or using his disclosed opinions and evidence at trial, it cannot, by withdrawing the expert, change the evident purpose for which the party obtained the expert's opinions.  Thus, neither the protections of the common-law work-product doctrine nor the terms of Rule 26(b)(3) would apply.  Moreover, Plaintiffs have not claimed that Mr. Leis's opinions constitute work product beyond the provisions of Rule 26(b)(4)(D).

Third, this case is currently in the period of expert discovery and, although the case-management plan does not specifically address discovery from withdrawn experts, and neither does *Koenig*, the Court finds that Plaintiffs have not shown good reason why that expert discovery should not extend to withdrawn experts.  Rule 26(b)(4)(A) states that "[a] party may depose any person who has been identified as an expert whose opinions may be presented at trial" and Plaintiffs identified Mr. Leis as an expert whose opinions might be presented at trial.  In addition, if a court should weigh the probative value of information sought from an expert against the prejudice to the disclosing party, see *Meharg*, 2009 WL 1867696, *1; *Cinergy*, 2009 WL 1124969, *2, then the Court finds that the scales tilt in favor of allowing Defendants' requested discovery from Mr. Leis.  Mr. Leis's opinion of Plaintiffs' lost profits or lost revenues is significantly different from Ms. Campbell's opinion.  In addition, in his fact deposition, Mr. Leis testified to a lack of

10

knowledge regarding lost profits.  And, because Mr. Leis's deposition is set to occur in Louisville, Kentucky and Mr. Leis lives in Jeffersonville, Indiana, there should be minimal inconvenience for him.

Plaintiffs also request that a second deposition of Mr. Leis be at Defendants' expense (presumably, they mean that Defendants should pay Plaintiffs' costs, expenses, and fees to participate), including payment of an expert-witness fee to Mr. Leis.  Because Plaintiffs cite no authority for their requests; the Court has found Mr. Leis's deposition to fall under regular expert discovery; and there is no evidence that Plaintiffs paid Mr. Leis an expert-witness fee for his opinion or that he has been paid an expert-witness fee for providing expert testimony in other cases, the Court denies Plaintiffs' request.

Defendants requested that they be awarded, under Rule 37(a)(5)(B), the fees they have incurred in opposing the present motion.  Because Rule 37(a)(5)(B) applies to motions to compel and not tp motions to quash, Defendants' request is denied.

## Conclusion

For the reasons explained above, the Court finds and concludes that Defendants may depose, and obtain documents from, Mr. Leis.  Therefore, *Plaintiffs' Motion To Quash the Subpoenas Issued to Jeff Leis* [doc. 307] is **DENIED**.  Plaintiffs' request to impose their

costs, expenses, and fees of participation in Mr. Leis' deposition on Defendants is **DENIED**.  Defendants' request for an award of their costs, including fees, in opposing the present motion, is **DENIED**.

    **DONE this date:**  11/09/2015


                                        _Denise K. LaRue_
                                        Denise K. LaRue
                                        United States Magistrate Judge
                                        Southern District of Indiana


Distribution to all ECF-registered counsel of record _via_ ECF-generated e-mail.