UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PAIN CENTER OF SE INDIANA, LLC; INDIANA PAIN MEDICINE AND REHABILITATION CENTER, P.C.; and ANTHONY ALEXANDER, M.D., <br><br>                Plaintiffs, <br><br> vs. <br><br> ORIGIN HEALTHCARE SOLUTIONS LLC; <br> SSIMED (d/b/a SSIMED Holding, LLC); <br> ORIGIN HOLDINGS, INC., a Delaware Corporation; JOHN DOES (1–50) inclusive; and JOHN DOES (1–100) inclusive, <br><br>                Defendants. | 1:13-cv-00133-RLY-DKL |

**ENTRY ON PLAINTIFFS' OBJECTIONS TO THE MAGISTRATE JUDGE'S AUGUST 5 AND AUGUST 25, 2015 ORDERS**

This matter comes before the court on Plaintiffs' objections to two orders of the Magistrate Judge, filed on August 5, 2015 (Filing No. 261 ("Interim Order")) and August 25, 2015 (Filing No. 273 ("Final Order")). Both orders concern Defendants' renewed motion to compel responses to requests for production ("RFPs") 7 through 10. These requests seek the billing and payment data that shows whether Plaintiffs received compensation for their services between 2003 and 2012. Based on the record before her, the Magistrate Judge issued the Interim Order setting forth her findings and concluding that Defendants are entitled to the materials sought in the RFPs. The Interim Order,

1

however, stopped short of granting Defendants' motion to compel and instead afforded Plaintiffs two weeks to respond to the RFPs without a court order. This gave parties' counsel an opportunity to meet and confer to determine the best methods of extracting the data without further court intervention.

The parties did not reach an agreement, and Plaintiffs filed an objection to the Interim Order challenging the conclusion that Defendants are entitled to production. On August 25, the Magistrate Judge issued the Final Order granting Defendants' motion to compel and ordering production. Plaintiffs filed an objection to the Final Order (Filing No. 287 ("Objection")), but the first six pages of the objection comes, nearly verbatim, from Plaintiffs' objection to the Interim Order (Filing No. 266). Thus, for the sake of ease, the court now addresses Plaintiffs' objections to both the Interim and the Final Orders.[1] For reasons set forth below, the court **OVERRULES** both objections.

## I.   Background

The RFPs in dispute seek "(1) SQL Backup of Plaintiffs' client database from their SQL [server] for 2003 through 2012; (2) the backup and all documentation of the database from which Plaintiffs created the closing files that Plaintiffs sent to Defendants for 2003 through 2012; and (3) contents of folder 91071 on Plaintiffs' SQL server."[2]

---

[1]   Because Plaintiffs' objection to the Final Order incorporates their objection to the Interim Order, the court will cite only to the former.

[2]   The Magistrate Judge provided the following explanation of the materials Defendants seek:

> "**SQL**", abbreviation of "structured query language," is a "standardized query language for requesting information from a database." www.webopedia.com/TERM/S/SQL.html (this, and all online references cited

2

(Filing No. 221 ("April 14 Entry") at 8).  Defendants have maintained that this information would reveal whether, and to what extent, Plaintiffs received compensation for their services.  Such information sheds light on Plaintiffs' allegations of lost revenue due to Defendants' software.  Plaintiffs objected to each request with boilerplate language asserting vagueness, overbreadth, undue burden, and duplicative nature as grounds for their objections.  (*See* Filing No. 247-2 at 5–6).

On April 14, 2015, the Magistrate Judge denied in part, without prejudice, Defendants' first motion to compel production, concluding that the parties insufficiently explained the materials at issue and their respective positions on discoverability.  (*Id.* at 8–9).  She ordered the parties to meet and confer further to better identify and articulate the issues.  To help facilitate a resolution, the Magistrate Judge advised the parties that (1) if the materials tended to show information about Plaintiffs' billings, and therefore damages, the materials are relevant; (2) Plaintiffs need not make duplicative production

---

herein, last visited on July 30, 2015). An "**SQL server**" is, "[g]enerically, any database management system (DBMS) that can respond to queries from client machines formatted in the SQL language. When capitalized, the term generally refers to either of two database management products from Sybase and Microsoft. Both companies offer client-server DBMS products called SQL Server." www.webopedia.com/TERM/S/SQL_Server.html. **Microsoft SQL Server** is "a relational database management system developed by Microsoft. As a database server, it is a software product with the primary function of storing and retrieving data as requested by other software applications which may run either on the same computer or on another computer across a network (including the internet)." https://en.wikipedia.org/wiki/Microsoft_SQL-Server. An "**SQL Backup**" is "[a] copy of SQL Server data that can be used to restore and recover the data after a failure. A backup of SQL Server data is created at the level of a database or one or more of its files or filegroups." https://msdn.microsoft.com/en-us/library/ms175477.aspx.

(Interim Order at 1–2).

and instead may simply identify prior productions; and (3) the court would unlikely compel production if Defendants already possess the sought information, "*in the same form, nature, and completeness, in all material respects*, such that production of the requested documents by Plaintiffs would add nothing material." (April 14 Entry at 8–9 (emphasis added)). The Magistrate Judge instructed Defendants to refile their motion to compel if the parties failed to resolve the dispute. (*Id.*).

Alas, communication between the parties' counsel accomplished nothing. Counsel for Defendants, Michele Anderson, initiated email communication and explained that Dr. Alexander's deposition testimony revealed that Plaintiffs' database contains the information Defendants seek—i.e., whether Plaintiffs received payment on claims submitted using Defendants' software. (Filing No. 247-3 at 1). Counsel for Plaintiffs, Volney Brand, responded that Plaintiffs objected to the requests due to "privacy issues" but that their expert would propose an alternative production. (Filing No. 247-6). In a subsequent email, however, Mr. Brand claimed Plaintiffs could not make sense of Defendants' request. (Filing No. 247-7). He also noted that Plaintiffs objected to the requests because production would include "confidential [patient] records that have nothing to do with the issue in this case." (*Id.*).

Ms. Anderson subsequently clarified Defendants' requests as follows:

As I previously explained, the SQL database is the database that Plaintiffs hosted when they were using Defendant's [sic] software. The SQL database contains information regarding Plaintiffs' patients, the procedures performed by Plaintiffs for their patients, the costs charged by Plaintiffs for those procedures, and whether Plaintiffs received payment for those procedures. Because Plaintiffs' [sic] hosted the SQL database between 2003 and 2012, information regarding whether Plaintiffs received payment for the

4

>procedures they performed between 2003 and 2012 is exclusively in Plaintiffs' possession and control. That information was incorporated in the greenway system that Plaintiffs are [ ] using, according to Dr. Alexander's testimony. Defendants need the payment information to respond to Plaintiffs' damage claims for allegedly unpaid insurance claims. Defendants do not want to access Plaintiffs' confidential records.

(Filing No. 247-8 at 1). Mr. Brand responded with the following:

>There is no confusion about the fact that the SQL database contains sensitive patient records. My confusion remains in why you need access to an entire database based on your request. That has always been the case. No one can make sense of your request. The bottom line is we object to your request as written. We do not object to providing nonduplicative [sic] payment information, however, that should be in the [Defendants'] SSIMED system.

(Filing No. 247-9 at 1). Ms. Anderson informed Mr. Brand that, contrary to his assertion, payment information does not exist in Defendants' SSIMED system. (Filing No. 247-10 at 1). Because Mr. Brand indicated that Plaintiffs do not object to providing non-duplicative payment information, Ms. Anderson offered her advice as to the best way to extract the information from Plaintiffs' database. (*See id.*). Having received no response from Mr. Brand or production from Plaintiffs, Ms. Anderson filed Defendants' renewed motion to compel.

In support of the motion, Defendants again explained that Plaintiffs have exclusive possession and control of information sought in RFPs 7 through 10 and that Defendants need this information to respond to Plaintiffs' damages allegations. To quell any concern over patient confidentiality, Defendants also reminded Plaintiffs of the standing protective order in this case. (*See* Filing No. 248 at 7–8). Plaintiffs opposed the motion in a few conclusory statements, asserting simply that Defendants "wholly failed to address Plaintiffs' overbreadth objection or explain how most of this information is

5

relevant to this case," and that "Defendants should not be allowed information regarding all patient data in order to learn whether Plaintiffs were paid for SSIMED claims using Greenway software."[3] They also asserted, without support or citation, that "according to Defendants' previous admissions, this [billing and payment information] is located in the closing files maintained by Defendants." (Filing No. 255 at 1–2).

On August 5, the Magistrate Judge addressed the parties' positions as to RFPs 7 through 10 in the Interim Order. She found Plaintiffs' opposition unconvincing and insufficient to support their boilerplate objections. She noted Plaintiffs' repeated failure to expound on asserted relevance or "privacy" objections. She observed Mr. Brand's evasive responses to Ms. Anderson's attempts to resolve the dispute. From the materials presented on Defendants' motion, the Magistrate Judge inferred that Plaintiffs failed to engage Defendants in good faith. Nevertheless, the Interim Order afforded Plaintiffs two weeks to respond to RFPs 7 through 10 before granting Defendants' motion and thus ordering production. (Interim Order at 11). The Interim Order also instructed the parties' counsel to confer telephonically with information technology ("IT") personnel to determine the best methods, means, and timetable for extracting the information responsive to RFPs 7 through 10. Again, the parties' counsel failed to achieve a resolution.

---

[3] Apparently, Plaintiffs now use the Greenway software; however, during the time period in which Plaintiffs used Defendants' software, they hosted a patient-billing database. Plaintiffs have not disputed Defendants' claim that this patient-billing database was incorporated into the succeeding Greenway system. (*See* Interim Order at 7).

6

**II.    Discussion**

Plaintiffs appear to assert several grounds for finding clear error in the Interim and Final Orders.  However, because much of Plaintiffs' supportive briefs consist of single-sentence grievances lacking any context or support, the court addresses only the claims for which it discerns at least a shred of support.  These include challenges to findings that Plaintiffs (1) did not engage Defendants in good faith, and (2) failed to establish that the RFPs imposed undue burden or (3) subjected Plaintiffs to liability under the Health Insurance Portability and Accountability Act ("HIPAA").  Plaintiffs also object to the Magistrate Judge's protocol for extracting the information from Plaintiffs' servers.

The district court reviews the non-dispositive discovery decisions of a magistrate judge for clear error.  *Domanus v. Lewicki*, 742 F.3d 290, 295 (7th Cir. 2014) (citation omitted); Fed. R. Civ. P. 72(a).  The court, therefore, will not upset a magistrate judge's decision unless it runs contrary to law or leaves the court with a definite and firm conviction that the magistrate judge made a mistake.  *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 943 (7th Cir. 1997).  When reviewing a nondispositive matter for clear error, the court considers only arguments and issues put forth before the Magistrate Judge.  *Murray v. Nationwide Better Health*, No. 10–3262, 2011 WL 2516909, at *2 (C.D. Ill. June 24, 2011) (citations omitted).

Plaintiffs first argue the Magistrate Judge erroneously found that Plaintiffs failed to engage Defendants in good faith to resolve the dispute.  They take issue with her reliance upon email communications.  (*See* Objection at 3–4).  On this point, Plaintiffs briefly state that counsel had "other communications" but do not bother to describe them.

7

Perhaps attempting to explain the communication breakdown, Plaintiffs claim Defendants failed to establish any difference between payment information in closing files and that found on the SQL database. (Objection at 4). First, when a party seeks relevant information in discovery, the party opposing production has the burden of establishing that the request requires duplicative production. *See Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006). Second, Plaintiffs did not make this argument in opposition to Defendants' motion. Plaintiffs simply stated that "according to Defendants [sic] previous admissions, this information is located in the closing files maintained by Defendants." (Filing No. 255 at 1). Plaintiffs provide no citation, no qualification, nor any rebuttal to Defendants' clear explanation of the data absent from the closing files and its relevance to damages.

    As to Plaintiffs' handling of this dispute, the court agrees that the record reflects a lack of good faith effort to reach a resolution. The email communications between counsel show, at best, a failure of Mr. Brand to either read or attempt to understand Defendants' position. At worst, his curt responses exhibit a feigned ignorance aimed at dodging or obfuscating the issues. Even when confronted with Defendants' motion to compel, which plainly articulated their need for production (i.e., only Plaintiffs possess information showing whether they in fact received payment for services), Plaintiffs baldly repeat the debunked claim that the closing files in Defendants' possession contain the data sought in the RFPs. (Filing No. 255 at 1). Again, Plaintiffs made these claims without explanation, documentation, or rebuttal to Defendants' position. (*See* Filing No. 255 at 2; Filing No. 247-10 at 1–2).

8

Second, Plaintiffs claim they "have made clear that Defendants [sic] admittedly blind request of backup data that has to be accessed with input from their personnel is unduly burdensome," and that a finding otherwise amounts to clear error. (Objection at 6). Plaintiffs' opposition to the motion to compel contains no mention of undue burden. Nor do Plaintiffs direct the court elsewhere for support. If Plaintiffs had established with such clarity the undue burden of the RFPs, it should not have unduly burdened Plaintiffs to minimally articulate as much. The court finds no error here.

Third, Plaintiffs object on grounds that production would subject them to liability under HIPAA. Plaintiffs have repeatedly failed, however, to explain how the protective order in this case does not resolve issues of patient confidentiality. Instead, Plaintiffs advance a tit-for-tat argument, pointing to prior instances where the Magistrate Judge curbed Plaintiffs' discovery to account for commercially sensitive information and the patient information of Defendants' other customers. Plaintiffs do not place these rulings in context (i.e., provide the arguments presented in support of or against production), and the court declines to develop this argument on Plaintiffs' behalf. *See Vaughn v. King*, 167 F.3d 347, 354 (7th Cir. 1999) ("It is not the responsibility of this court to make arguments for the parties."). In any event, Plaintiffs' opposition to the motion to compel merely stated that Plaintiffs have "privacy concerns including HIPPA [sic]." (Filing No. 255 at 2). This simply does not suffice. *See Weinstein v. Schwartz*, 422 F.3d 476, 477 n.1 (7th Cir. 2005) ("[P]erfunctory and undeveloped arguments that are unsupported by pertinent authority, are waived.").

9

Fourth, Plaintiffs take issue with the protocol for the extraction of data from Plaintiffs' database.[4] They claim the Magistrate Judge failed to afford Plaintiffs opportunity to produce the information "before the [c]ourt took such an unprecedented step based on the course of this litigation."[5] (Objection at 8). The court disagrees. Magistrate judges "enjoy extremely broad discretion in controlling discovery." *Jones v. City of Elkhart*, 737 F.3d 1107, 1115 (7th Cir. 2013). This discretion extends to the area of electronic discovery where, as in this case, the party opposing a motion to compel fails to show that production would impose undue burden or cost. *See* Fed. R. Civ. P. 26(b)(2)(B) ("The court may specify conditions for the discovery."); s*ee also Simon Prop. Grp. L.P. v. mySimon, Inc.*, 194 F.R.D. 639, 641–42 (S.D. Ind. 2000) (granting plaintiff access to defendant's computers to determine whether information was deleted, and setting forth a procedural protocol that balanced the need for production with the burden it imposed).

As explained above, Plaintiffs did not oppose Defendants' motion to compel on grounds that production would impose undue burden or costs. Moreover, the Interim Order assessed the parties' arguments, concluded that Plaintiffs must respond to RFPs 7

---

[4]     The protocol set forth in the Final Order directs the parties to set an "access date" when Defendants and their IT personnel will visit one of Plaintiffs' locations and retrieve the information described in RFPs 7 through 10. (*See* Final Order at 8–11).

[5]     Plaintiffs also assert clear error because the Final Order granted Defendants physical access to Plaintiffs' database absent a formal request that complies with Rule 34(b). The protocol is a product of the arguments presented to the Magistrate Judge, her consultation with the parties, and Plaintiffs' position that they neither understand the requests nor have the resources to accomplish the data extraction. (*See* Final Order 5–6). Plaintiffs do not explain how this exercise of discretion amounts to clear error.

through 10, and afforded Plaintiffs two weeks to comply before ruling on the motion to compel and issuing the protocol. The protocol came after attempts by Ms. Anderson to engage Plaintiffs on extraction methods and the court's specific directions for counsel to confer with IT personnel to facilitate production. (*See* Interim Order at 11–12; Filing No. 247-10 at 1). Thus, Plaintiffs' complaint of not having sufficient opportunity to respond to RFPs 7 through 10 is not well received. The claim has no merit and therefore fails to support a finding of clear error.

Likewise, the court finds no clear error in ordering production of the actual data sought in the RFPs as opposed to "summary reports" of charges, payments, and adjustments. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1). Plaintiffs had the burden of establishing the burdensomeness, vagueness, or the duplicative nature of the RFPs. Plaintiffs did not meet their burden and, consequently, the Magistrate Judge ordered production in the manner she deemed fit based on the information before her. *See Jones*, 737 F.3d at 1115. Plaintiffs simply provide no legal foundation to justify their preferred alternative of producing "summary reports."

## Conclusion

For the foregoing reasons, both Plaintiffs' Objection to the Magistrate Judge's August 5, 2015 Interim Order (Filing No. 266) and Objection to the August 25, 2015 Order (Filing No. 287) are **OVERRULED**.

**SO ORDERED** this 11th day of January 2016.

_____
RICHARD L. YOUNG,  CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.